

# IN THE
# TENTH COURT OF APPEALS

## No. 10-14-00121-CR

**JEFFREY DEAN GERRON,**

Appellant

 **v.**

**THE STATE OF TEXAS,**

Appellee

**From the 40th District Court
Ellis County, Texas
Trial Court No. 36,660CR**

## O P I N I O N

Jeffrey Dean Gerron was convicted on nine of ten counts of possession of child pornography, and he was sentenced to consecutive terms of nine years in prison on each count. Act of May 27, 1985, 69th Leg., R.S., ch. 530, § 2, 1985 Tex. Gen. Laws 2133, 2134, *amended by* Act of May 29, 1999, 76th Leg., R.S., ch. 1415, § 22(c), 1999 Tex. Gen. Laws 4831, 4841 (current version at TEX. PENAL CODE ANN. § 43.26 (West Supp. 2016)).

In ten issues, Gerron complains that (1) the evidence was insufficient for the jury to have found beyond a reasonable doubt that the images in six of the photographs were

that of females under the age of 18; (2) subsection 43.25(a)(2) of the Penal Code is facially

unconstitutional; (3) the trial court abused its discretion by admitting hearsay testimony

of a law-enforcement officer from Norway; (4) the admission of the Norwegian law-

enforcement officer's testimony violated the Confrontation Clause; (5) the trial court

abused its discretion in admitting 491 photographs as extraneous-offense evidence; (6)

the trial court abused its discretion in allowing testimony regarding approximately 11,000

images that were found on Gerron's computer; (7) the trial court abused its discretion by

admitting a 64-page list of files that had been downloaded onto Gerron's computer; (8)

the trial court abused its discretion by excluding several books that Gerron had offered

into evidence; (9) the trial court erred by ordering that Gerron's sentences be served

consecutively; and (10) the trial court abused its discretion by admitting an anime

drawing during the punishment phase.

We will affirm.

## CONSTITUTIONALITY OF PENAL CODE SUBSECTION 43.25(a)(2)

We begin with Gerron's second issue, which asserts that the trial court erred by

denying Gerron's motion to quash the indictment, which asserted that the term "lewd

exhibition" of a child's genitals in subsection 43.25(a)(2) of the Penal Code is vague,

rendering the statute facially unconstitutional.  Section 43.26(b)(2) provides that "sexual

conduct" "has the meaning assigned by Section 43.25."   TEX. PENAL CODE ANN. §

43.26(b)(2).  Subsection 43.25(a)(2) of the Penal Code provides:

> "Sexual conduct" means sexual contact, actual or simulated sexual
> intercourse, deviate sexual intercourse, sexual bestiality, masturbation,

sado-masochistic abuse, or *lewd exhibition* of the genitals, the anus, or any portion of the female breast below the top of the areola.

TEX. PENAL CODE ANN. § 43.25(a)(2) (West 2011) (emphasis added). Gerron contends that the portion of the statute's subsection regarding "lewd exhibition" is facially unconstitutional because, by not defining "lewd exhibition," it fails to provide adequate notice of what conduct is prohibited. Gerron also argues that the statute is void for vagueness because it fails to define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement.

To prevail on a facial challenge to a statute, a party must establish that the statute *always* operates unconstitutionally in *all* possible circumstances. *State v. Rousseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013). A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid. *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992). Whether a statute is facially unconstitutional is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). When the constitutionality of a statute is attacked, we begin with the presumption that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Id*. at 14-15. The burden normally rests upon the person challenging the statute to establish its unconstitutionality. *Id*. at 15. In the absence of contrary evidence, we will presume the legislature acted in a constitutionally sound fashion. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002).

"A statute is void for vagueness if it fails to define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement." *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007). Because a party must show that the law is impermissibly vague in all of its applications, "a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982).

Gerron does not argue that the statute is vague as to his conduct by challenging the sufficiency of the evidence as it relates to the lewdness of the images that he was convicted of possessing. Therefore, Gerron has not met his burden of establishing that the term "lewd exhibition" is unconstitutional in all of its applications.

Additionally, a statute is not unconstitutionally vague merely because it fails to define words or phrases. *Engelking v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988). Instead, undefined terms in a statute are to be given their plain and ordinary meaning. *Watson v. State*, 369 S.W.3d 865, 870 (Tex. Crim. App. 2012). Words defined in dictionaries and with meanings so well known as to be understood by a person of ordinary intelligence are not considered vague and indefinite. *Id.*; *see* TEX. GOV'T CODE ANN. § 311.011(a) (West 2013) (providing that statutory "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage"). The term

"lewd exhibition," as used in the statute, is defined in dictionaries and is so well known as to be understood by a person of ordinary intelligence. *See Watson*, 369 S.W.3d at 870; *see also Goodson v. State*, No. 02-01-458-CR, 2003 WL 1894578, at *3 (Tex. App.—Fort Worth Apr. 17, 2003, pet. ref'd) (mem. op., not designated for publication) ("lewd exhibition" not unconstitutionally vague); *Garay v. State*, 954 S.W.2d 59, 63 (Tex. App.—San Antonio 1997, pet. ref'd) (same). Accordingly, the statute is not void for vagueness. We overrule issue two.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Gerron complains that the evidence was insufficient for the jury to have found beyond a reasonable doubt that the females depicted in counts 1, 2, 5, 6, 8, and 10 were under the age of 18. Because Gerron was found not guilty of count one, we will not address that image.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

If the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

Our review of "all of the evidence" includes evidence that was both properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).

Dr. Jayme Coffman, the State's expert in child anatomy, testified that she could not make a determination that the females portrayed in counts (and exhibits) 5, 6, 8, and 10 were under the age of 18.[1] Because of this testimony, Gerron contends that if an expert could not determine the age of the females in those photographs, a jury could not determine beyond a reasonable doubt that the females were under the age of 18 when the photographs were taken.

Dr. Coffman was the medical director of the Care Team, which is a child-abuse program at Cook Children's Medical Center in Fort Worth. Dr. Coffman testified as a

---

[1] Given Gerron's reason for appealing the age issue for exhibits 5, 6, 8, and 10—Dr. Coffman's inability to determine if the pictured females were under the age of 18—we are puzzled by Gerron's sufficiency challenge to count 2 because Dr. Coffman testified about it as follows: "This one I thought was under the age of 18." We will nevertheless address exhibit 2, the image for count 2.

medical expert in identifying the age range of a female child using, as a guide, the four levels of puberty pertaining to breast and genitalia development: pre-puberty (or no signs of puberty); early puberty; late puberty; and adult body style. Of the ten photographs that Gerron was on trial for, Dr. Coffman testified that, in her opinion, the girls depicted in exhibits 2, 3, 4, 7, and 9 were under the age of 18. Dr. Coffman testified that she could not make a determination from the images whether the girls in exhibits 1, 5, 6, 8, or 10 were under the age of 18,[2] but she did not testify that she believed that the girls depicted in any of the images were over the age of 18.

Determination of the age of a child in a possession of child pornography case is a fact issue for the factfinder to decide. *Carter v. State*, No. 05-05-01424-CR, 2006 WL 3628889, at *5-6 (Tex. App.—Dallas Dec. 14, 2006, pet ref'd) (mem. op., not designated for publication); TEX. PENAL CODE ANN. § 43.25(g). The factfinder may make this determination by any of several methods: (1) personal inspection of the child; (2) inspection of the photograph or motion picture that shows the child engaging in the sexual performance; (3) oral testimony by a witness to the sexual performance as to the age of the child based on the child's appearance at the time; (4) expert medical testimony based on the appearance of the child engaging in the sexual performance; or (5) any other method authorized by law or by the rules of evidence at common law. TEX. PENAL CODE ANN. § 43.25(g). The factfinder may also use common sense and apply common

---

[2] Because Gerron was found not guilty of possessing the image in Count 1, Gerron's inclusion of it in this issue is also puzzling, and we will not address it. We note, however, that Dr. Coffman explained that she could not make a medical determination on the age range for the female in exhibit 1 because "the image is very pixelated so it's kind of blurred, so it makes it difficult. So when I'm trying to look at the breast contour to see if there is breast tissue, due to the shadows and the pixelation, for me it was difficult to say."

knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence. *See Carter*, 2006 WL 3628889, at *5 (citing *Griffith v. State*, 976 S.W.2d 686, 690 (Tex. App.—Tyler 1997, pet. ref'd)).

Expert testimony is not required to determine a child's age in a child-pornography possession case. *See* TEX. PENAL CODE ANN. § 43.25(g). The purpose of expert testimony is to assist the jury, and an expert's opinion is not determinative of an ultimate fact question. *See* TEX. R. EVID. 702. The jury is free to accept or reject some or all of the testimony of an expert witness. *See Carter*, 2006 WL 3628889, at *5 (citing *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986) (judgments and inferences of experts not conclusive on jury or trier of fact); and *SAS & Assocs., Inc. v. Home Mktg. Serv'g, Inc.*, 168 S.W.3d 296, 300 (Tex. App.—Dallas 2005, pet. denied)).

Additionally, Bjorn Ludvigsen, a law-enforcement officer with the National Criminal Police of Norway, testified that he was involved in an investigation of two girls from Norway named Maria and Ellen. Ludvigsen testified that Maria and Ellen were the girls depicted in exhibits 5, 8, 9, and 10 and that their ages were 10 and 11 when the photographs were taken in Norway.[3] Ludvigsen had seen those images numerous times in his investigations of child exploitation and said that exhibits 5 and 10 were photographs of Ellen and exhibits 8 and 9 were photographs of Maria. The computer-forensic expert testified that the images in exhibits 5, 8, and 10 were entitled

---

[3] We discuss Ludvigsen's testimony in greater detail in issue three.

"HotArtChildModels."

Except for exhibit 8, all of the photographs show the subject female's face and most of her body; exhibit 8 is a close-up photograph of a female's anus and vagina from a posterior view. Regarding exhibit 8, Dr. Coffman said that she could not make an age-range determination because the labia majora was closed. As mentioned above, Dr. Coffman testified that the girl depicted in exhibit 9 (Maria, according to Ludvigsen) was under the age of 18, and Ludvigsen said that exhibit 8 is also a photograph of Maria.

The trial court admitted, over Gerron's objections, extraneous-offense evidence offered by the State to prove that Gerron knew that, for the ten images for which he was indicted, those images depicted females under the age of 18. The extraneous-offense evidence consisted of: (1) 491 photographs that were images of girls under the age of 18 in sexually provocative poses and were a mixture of child pornography and "erotica" (clothed children who are provocatively posed); (2) testimony that approximately 11,000 images found on Gerron's computer were of children; and (3) a 64-page log of files that Gerron purportedly downloaded and that contained many downloads with titles that specifically referred to young girls and sexual conduct.[4]

Here, the jury, as the factfinder, reviewed the images and other evidence and determined that the girls depicted in exhibits 2 through 10 were under the age of 18 at the time that the images were made. Viewing the evidence in the light most favorable to the judgment, we conclude that the evidence is sufficient to support the jury's guilty

---

[4] We discuss this extraneous-offense evidence in greater detail in issues five, six, and seven.

findings. We overrule issue one.

## ADMISSION OF EXTRANEOUS-OFFENSE EVIDENCE

We now move to issues five through seven. In issue five, Gerron complains that the trial court abused its discretion by admitting 491 images that were found on his computer because they were not admissible under Rules of Evidence 403 and 404(b). In issue six, Gerron complains that the trial court abused its discretion by allowing testimony that approximately 11,000 images depicting children and child pornography were found on his computer because they were not admissible under rules 403 and 404(b). In issue seven, Gerron complains that the trial court abused its discretion by admitting a 64-page download log from Gerron's computer because it was not admissible under rules 403 and 404(b).

### *Photographs and Testimony*

Gerron complains that the trial court abused its discretion by admitting 491 images that were found on Gerron's computer. All of the photographs depicted girls under the age of 18 in sexually provocative poses, but only some of the photographs constitute child pornography. The rest of the photographs were described as "erotica"—clothed children who are provocatively posed. The trial court ruled that the images were admissible and relevant to Gerron's intent and knowledge.

Gerron also complains of the admission of testimony regarding approximately 11,000 images of children that were found on Gerron's computer during a search by the State's computer-forensic expert. Gerron argues that there was no basis under Rule 404(b) for the photographs or the testimony regarding the 11,000 images to be admissible

as extraneous-offense evidence. Alternatively, Gerron argues that even if the images and testimony were admissible under Rule 404(b), they were unfairly prejudicial under Rule 403 and should have been excluded.

*Rule 404(b)*

We review a trial court's ruling on the admissibility of extraneous-offense evidence for an abuse of discretion. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). As long as the trial court's ruling is not outside the "zone of reasonable disagreement," there is no abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *see also Newton v. State,* 301 S.W.3d 315, 317 (Tex. App.—Waco 2009, pet. ref'd) (citing *De La Paz v. State,* 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009)).

Gerron contends that the photographs and the testimony regarding the approximately 11,000 images of children were inadmissible under Rule 404(b). Evidence offered, however, to prove, among other things, intent, knowledge, or absence of mistake or accident, is not barred by Rule 404(b). TEX. R. EVID. 404(b)(2); *Santellan v. State*, 939 S.W.2d 155, 168 (Tex. Crim. App. 1997). Extraneous-offense evidence may also be admitted to rebut a defensive theory. *Id.* at 169.

The State was required to prove that Gerron possessed the offending pictures intentionally or knowingly. *See* TEX. PENAL CODE ANN. § 43.26(a). It is not uncommon that the culpable mental state required by a penal statute is proved by circumstantial evidence. *See Krause v. State*, 243 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

During trial, Gerron's counsel consistently argued that there was insufficient

evidence about the age of the girls depicted in some of the exhibits as described in his first issue. The extraneous photographs were all images of girls under the age of 18 and included a series of approximately forty photographs of a child in progression from being clothed to ultimately revealing genitals and breasts. The testimony was that the approximately 11,000 images found on Gerron's computer were of children. This supports the State's theory that Gerron knew that he possessed photographs of girls under the age of 18 and that the extraneous pictures and testimony are admissible for that reason.

Gerron's trial argument that claimed a lack of knowledge that the materials were child pornography—visual material depicting a child under age 18 engaging in sexual conduct (lewd exhibition)—as shown by his contention to law enforcement that he believed the images were lawful to possess, was an avenue for the admission of the extraneous materials. *See Johnson v. State*, 932 S.W.2d 296, 302 (Tex. App.—Austin 1996, pet. ref'd). The possession of similar types of material—photographs of girls under the age of 18, whether they constituted child pornography or child "erotica"—is a circumstance that the jury was entitled to consider as circumstantial evidence of Gerron's culpable mental state. Therefore, we conclude that the trial court did not abuse its discretion in admitting the extraneous photographs and the testimony regarding the approximately 11,000 images as exceptions under Rule 404(b).

*Rule 403*

Gerron further argues that the evidence was inadmissible under Rule 403. Thus, we must now consider whether or not the evidence, although relevant and therefore,

admissible, should have been disallowed because its probative value was substantially

outweighed by the danger of unfair prejudice. TEX. R. EVID. 403.

> In its seminal decision in *Montgomery v. State*, the Court of Criminal Appeals identified four non-exclusive factors to be considered in determining whether evidence should be excluded under Rule 403. Those factors were: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and, (4) the proponent's need for the evidence.

> More recently, the Court has looked to the language of Rule 403 and restated the pertinent factors.

>> [A] trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Of course, these factors may well blend together in practice.

> *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (footnotes omitted).

*Newton*, 301 S.W.3d at 319 (footnote and citations omitted); *see also Casey v. State*, 215

S.W.3d 870, 880 (Tex. Crim. App. 2007).

There is a presumption that evidence that is deemed to be relevant is admissible.

*Casey*, 215 S.W.3d at 879. Further, "'probative value' refers to the inherent probative force

of an item of evidence—that is, how strongly it serves to make more or less probable the

existence of a fact of consequence to the litigation—coupled with the proponent's need

for that item of evidence." *Id*. Unfair prejudice refers not to the fact that the evidence

injures a party's case or position, as virtually all evidence offered by one party will prejudice the opponent's case or position. *Id.* at 883. Evidence is unfairly prejudicial when it tends to have some adverse effect upon the defendant beyond tending to prove the fact or issue that justifies its admission into evidence. *Id.*

The first matter to consider is the inherent probative force of the evidence. *Id.* at 879. Regarding the photographs, the various pictures of girls under the age of 18 in sexually provocative poses were highly probative of the fact that Gerron had a fascination or preoccupation with younger girls in a sexual manner. The testimony regarding the discovery of the approximately 11,000 photographs of children also demonstrates the same. Because one of Gerron's defensive theories was the lack of proof of the very issue these items tended to prove, that being that the girls depicted in the photographs for which he was indicted were under the age of 18, the probative force of the evidence in question is significant.

Next, the proponent's need for the evidence must be examined. *Id.* at 888. As pointed out previously, Gerron's trial position was that the State's evidence was insufficient to show that some of the pictures portrayed girls actually under the age of 18. Therefore, Gerron's knowledge of, and preoccupation with, pictures of younger girls, both those that might be termed pornographic and otherwise, was critical to proving the State's case. This consideration would heavily favor the admission of the evidence. From the aspect of the subject matter of the trial, we do not believe that the evidence in question distracted the jury from their main inquiry, nor did the evidence create a situation where the jury gave undue credence to this evidence. *See id.* This is because many of the

photographs that Gerron complains about were less graphic than most of the photographs for which he was tried, and there was little discussion as to the content of the approximately 11,000 images found on Gerron's computer. These factors favor the admission of the evidence.

The evidence of the actual images or the testimony regarding the images did not seem to take an inordinate amount of time to introduce. The photographs were admitted during the State's computer-forensic expert's testimony and were offered in one large group. The photographs were shown to the State's expert, who testified that the females depicted in the photographs were under the age of 18. The testimony about the images that were found during the forensic examination of Gerron's computer was likewise brief and not particularly detailed regarding the substance of the images beyond that they depicted children. This factor also favors admission. We therefore cannot say that the trial court abused its discretion in admitting the 491 photographs or the testimony regarding the images found during the search of Gerron's computer. Accordingly, Gerron's fifth and sixth issues are overruled.

*Download Log*

In his seventh issue, Gerron complains that the trial court abused its discretion by admitting a 64-page log of files that Gerron purportedly downloaded from a file-sharing server called Azureus. Gerron argues that the log should have been excluded under Rules 404(b) and 403. The log was from a file-sharing system and showed that Gerron had downloaded images and videos, some of which were clearly not unlawful. The log, however, contained many downloads with titles that specifically referred to young girls

and sexual conduct.

*Rule 404(b)*

The log was used by the State to show that Gerron was actively downloading images and videos that depicted young girls and were sexual in nature. Two of Gerron's defensive theories at trial were that the images for which he was indicted did not constitute a lewd exhibition of the genitals and that he believed that the images were lawful because they were merely images of nude girls. The log was admissible to show Gerron's intent and knowledge as well as absence of mistake. The trial court did not abuse its discretion by admitting the log under Rule 404(b)(2).

*Rule 403*

Gerron further argues that the log should have been excluded because its probative value, if any, was greatly outweighed by unfair prejudice. We first consider the inherent probative force of the evidence. There was no testimony that the actual photographs or videos on the log were found on Gerron's computer. The log, however, was important for the State to establish that Gerron did not download the photographs of the girls for which he was indicted because of a mistaken belief as to their lawfulness. Additionally, because Gerron was challenging the lack of evidence of the age of the girls, the fact that he specifically searched for young girls engaging in sexual conduct was important for the State to show intent and knowledge. Because of this, there is probative force of the evidence in question.

Next, the proponent's need for the evidence must be examined. Because one of Gerron's trial positions was that the State's evidence was insufficient to show that he

knew that the images constituted a lewd exhibition of the genitals, Gerron's specific searches for photographs and videos of younger girls engaging in sexual conduct was critical to proving that element of the State's case. This consideration would favor the admission of the evidence. Further, we do not believe that the download log distracted the jury from their main inquiry, nor did the evidence create a situation where the jury gave undue credence to this evidence because the list of the files was just that—a list. The log was far less prejudicial than the actual photographs of the girls under the age of 18, which we have previously found to be admissible. These factors favor the admission of the evidence.

The introduction of the log did not seem to take an inordinate amount of time to introduce after the State's computer-forensic expert explained how the download log was discovered and the general purpose of file-sharing servers by individuals who obtain child pornography. The log was offered as one document and only a few selections were read to the jury during the trial. This factor also favors admission. We thus cannot say that the trial court abused its discretion when it admitted the download log. We overrule issue seven.

## ADMISSION OF LUDVIGSEN'S HEARSAY TESTIMONY

In issues three and four, Gerron complains that Ludvigsen's hearsay testimony about the ages of the girls in exhibits 5, 8, 9, and 10 was inadmissible and violated his Sixth Amendment right to confrontation, respectively. The trial court conducted a hearing outside of the presence of the jury to determine whether Ludvigsen's testimony would be admissible after Gerron had objected.

We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

Ludvigsen is an investigator in the area of child sexual exploitation for the National Criminal Police of Norway, an agency equivalent to the FBI. Ludvigsen testified that in 2007 he was involved with an investigation surrounding the photographs that served as the basis for counts 5, 8, 9, and 10. Ludvigsen testified that the photographs were taken by two girls in Norway named Maria and Ellen and that the girls had taken the photographs themselves. Ludvigsen testified that Maria and Ellen were the girls depicted in exhibits 5, 8, 9, and 10 and that their ages were 10 and 11, respectively, when the photographs were taken in Norway.

Ludvigsen related that, in his investigation surrounding the photographs that served as the basis for counts 5, 8, 9, and 10, he had received a total of 55 photographs of the two girls, and those four photographs were a part of the series of 55 photographs. When he began his investigation, the girls had already been identified, and the crime he was investigating was the identity of the person who had groomed the girls to take the photographs of themselves and to send them on the internet. According to Ludvigsen, Maria and Ellen had been communicating on the internet through a chat program with a person who they thought was a ten-year old girl and who suggested that, if they wanted to be photo models, they needed to take and send photographs that were similar to a series of child pornography images that the person sent to Maria and Ellen.

Ludvigsen said that the Maria and Ellen series of 55 photographs was similar to another series called the Tori series, which he was familiar with. He testified that the Tori

series was what had been sent to Maria and Ellen for them to mimic and that exhibit 7, which he was familiar with, was a photograph from the Tori series. Regarding exhibit 7, which was in the group of photographs that Dr. Coffman thought was under the age of 18, she testified: "On this one she doesn't have any breast tissue."[5] Dr. Coffman next explained that a girl with no breast tissue or breast development would be considered a prepubescent child.

Ludvigsen's investigation was based on his review of official police reports as to the girls' identities, ages, and how and when the photographs were taken and distributed. Exhibits 5 and 10 were of Ellen, and exhibits 8 and 9 were of Maria. According to Ludvigsen's records, the girls' parents were the source of the birth dates for the girls in the original investigation. Ludvigsen was not involved in the original investigation. Ludvigsen had never met or personally seen the girls or their parents, although he knew where they were in Norway.

Ludvigsen testified that in preparation for his testimony in Gerron's trial, he reviewed the passport records of the two girls. Both girls had passports issued around the same time that the photographs in counts 5, 8, 9, and 10 were taken and had subsequently updated their passports. Ludvigsen compared the passport photographs with the photographs in counts 5, 8, 9, and 10 and believed that they were the same girls. Ludvigsen had copies of the passport records with him at trial and showed them to the trial court during the hearing outside the presence of the jury. The records were in

---

[5] Gerron did not challenge the sufficiency of the evidence as to exhibit 7.

Norwegian, so Ludvigsen translated them. The passport records were not offered or admitted into evidence and were returned to Ludvigsen after the trial court looked at them.

The trial court ruled that Ludvigsen's testimony on the ages of the girls at the time of the photographs was admissible and overruled Gerron's hearsay and confrontation objections.

*Preservation*

The State argues that Gerron did not preserve his hearsay and confrontation objections because he did not object every time potentially inadmissible hearsay testimony was given before the jury. Because the trial court conducted a hearing outside of the presence of the jury to determine the admissibility of Ludvigsen's testimony, Gerron's hearsay and confrontation objections to Ludvigsen's testimony at the hearing outside the presence of the jury were sufficient to preserve his complaint for appeal. *See* TEX. R. EVID. 103(a)(1); *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).

*Public Records*

The State contended at oral argument for the first time that Ludvigsen's testimony about the ages of the girls depicted in counts 5, 8, 9, and 10 was admissible under the public-records exception to the hearsay rule. *See* TEX. R. EVID. 803(8). The version of Rule 803(8) in effect at the time of Gerron's trial provided that the following is not excluded by the hearsay rule, even though the declarant is available as a witness:

> (8) Public Records and Reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth (A) the activities of the office or agency; (B) matters observed pursuant to duty

imposed by law as to which matters there was a duty to report, excluding in criminal cases matters observed by police officers and other law enforcement personnel; or (C) in civil cases as to any party and in criminal cases as against the state, factual findings resulting from an investigation made pursuant to authority granted by law; unless the sources of information or other circumstances indicate lack of trustworthiness.

TEX. R. EVID. 803(8).

In support of this contention, the State cites *Butler v. State*, 872 S.W.2d 227 (Tex. Crim. App. 1994), where a medical examiner who was also a custodian of records testified as an expert witness about the substance of an autopsy report, although the autopsy report was not admitted into evidence and the autopsy had not been performed by the medical examiner. The defendant objected on the basis of hearsay. The Court of Criminal Appeals held:

> We find that the autopsy of [the victim] would have been admissible into evidence under the public records exception to the hearsay rule. TEX. R. EVID. 803(8)(B). … Therefore we also hold that [the medical examiner's] testimony concerning some of the contents of the autopsy report was not subject to a hearsay objection.

*Id.* at 238.

In response, Gerron does not contend that the passport records are not a public record. Gerron, however, did object on hearsay and confrontation grounds to Ludvigsen's testimony relating to the identity and investigation of Maria and Ellen in addition to the evidence of their ages when the photographs were taken. The majority of Ludvigsen's testimony described how the identities of the girls in the photographs in counts 5, 8, 9, and 10 were discovered and his role in investigating the distribution of the photographs. Ludvigsen testified that he did not have personal knowledge of the

identities of Maria and Ellen or the investigation surrounding the creation and initial dissemination of the photographs. All of Ludvigsen's information came from other investigators and their offense reports, which are generally not admissible. *See* TEX. R. EVID. 803(8)(B). The State has limited its arguments on appeal to Gerron's preservation of his complaints and to the public-records exception; the State did not present any hearsay exceptions in response to the objection to the remainder of Ludvigsen's testimony. We thus find that the trial court abused its discretion in the admission of Ludvigsen's hearsay testimony. We also find that the admission of Ludvigsen's hearsay testimony violated Gerron's confrontation rights. *See Coronado v. State,* 351 S.W.3d 315, 323-29 (Tex. Crim. App. 2011); *see also Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

*Harm*

We next address harm. The erroneous admission of hearsay evidence such as this is non-constitutional error and will result in reversal only if that error affected a substantial right of the defendant. *See* TEX. R. APP. P. 44.2(b). A substantial right is affected when the evidence, viewed in light of the record as a whole, had a substantial and injurious influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

> [N[on-constitutional error must be disregarded unless it affects the defendant's substantial rights. This court "will not overturn a criminal conviction for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or influenced the jury only slightly." In considering the potential to harm, the focus is not on whether the outcome of the trial was proper despite the error, but whether the error had a substantial or

injurious effect or influence on the jury's verdict. A conviction must be reversed for non-constitutional error if the reviewing court has grave doubt that the result of the trial was free from the substantial effect of the error. "Grave doubt" means that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." "[I]n cases of grave doubt as to harmlessness the petitioner must win."

*Barshaw v. State,* 342 S.W.3d 91, 93-94 (Tex. Crim. App. 2011) (footnoted citations omitted).

Because a violation of the Sixth Amendment right of confrontation constitutes constitutional error, we must reverse a trial court's judgment when Confrontation Clause error is present unless we can determine beyond a reasonable doubt that the error did not contribute to the conviction. TEX. R. APP. P. 44.2(a); *see McClenton v. State,* 167 S.W.3d 86, 94 (Tex. App.—Waco 2005, no pet.); *see also Langham v. State,* 305 S.W.3d 568, 582 & n.42 (Tex. Crim. App. 2010).

In determining specifically whether constitutional error under *Crawford* may be declared harmless beyond a reasonable doubt ... the following factors are relevant: 1) how important was the out-of-court statement to the State's case; 2) whether the out-of-court statement was cumulative of other evidence; 3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and 4) the overall strength of the prosecution's case. ... [T]he emphasis of a harm analysis pursuant to Rule 44.2(a) should not be on "the propriety of the outcome of the trial." That is to say, the question for the reviewing court is not whether the jury verdict was supported by the evidence. Instead, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at that verdict—whether, in other words, the error adversely affected the integrity of the process leading to the conviction. In reaching that decision, the reviewing court may also consider, in addition to the factors listed above, inter alia, the source and nature of the error, to what extent, if any, it was emphasized by the State, and how weighty the jury may have found the erroneously admitted evidence to be compared to the balance of the evidence with respect to the element or defensive issue to which it is relevant. With these considerations in mind, the reviewing court must ask itself whether there is a reasonable possibility that the *Crawford* error moved

the jury from a state of non-persuasion to one of persuasion on a particular issue. Ultimately, after considering these various factors, the reviewing court must be able to declare itself satisfied, to a level of confidence beyond a reasonable doubt, that the error did not contribute to the conviction before it can affirm it.

*Langham*, 305 S.W.3d at 582.

Of the four exhibits that were the subject of Ludvigsen's testimony, we begin with exhibit 9, which Ludvigsen said is a photograph of Maria when she was age 10. Regarding the girl in exhibit 9, Dr. Coffman testified: "This one I also thought she had not started puberty yet due to having no breast tissue." Dr. Coffman had earlier explained, regarding the image in exhibit 3, that a girl with no breast tissue or breast development would be considered a prepubescent child. Furthermore, the jury itself was able to inspect the image to determine if the person in it was under the age of 18. TEX. PENAL CODE ANN. § 43.25(g)(2). From our examination of the entire record and our review of the image in exhibit 9, which is undoubtedly a prepubescent girl, we conclude that the trial court's error in allowing Ludvigsen's testimony about the age of the girl in exhibit 9 did not have a substantial or injurious effect or influence on the jury's verdict. Likewise, after considering the constitutional-error factors, we conclude beyond a reasonable doubt that the confrontation error regarding Ludvigsen's testimony about the age of the girl in exhibit 9 did not contribute to the conviction on count 9.

We next turn to exhibits 5 and 10, which Ludvigsen said are photographs of Ellen when she was age 11, and to exhibit 8, which Ludvigsen said is a photograph of Maria. Exhibit 5 depicts a girl on her hands and knees, facing away from the camera, but with the girl's head turned to look at the camera. Dr. Coffman said of exhibit 5: "She looked

like she has quite a bit of breast tissue. Her areola contour with the breast tissue, it's difficult to tell. It looks confluent, although it's kind of hard to tell. But I just thought there was too much breast tissue for me to be able to really say."

Exhibit 10 is a slightly similar pose to exhibit 5, but is closer up and the girl is wearing a bra. Regarding exhibit 10, all that Dr. Coffman said was: "I could not make a determination on her."

Disregarding Ludvigsen's testimony that the person in exhibits 5 and 10 are the same girl, it is obvious that they are photographs of the same girl taken on the same bed. Both photographs also depict no pubic hair and undoubtedly depict an early prepubescent girl.

Exhibit 8 is a close-up photograph of a female's anus and vagina from a posterior view. There is a total absence of pubic hair, and the image is undoubtedly one of a prepubescent or early pubescent girl. Regarding exhibit 8, Dr. Coffman said that she could not make an age-range determination for that photograph because the labia majora was closed.

From our review of the images in exhibits 5, 8, and 10 and the record as a whole, including the State's two brief references to Ludvigsen in closing argument and the vast amount of evidence pertaining to Gerron's obvious fetish for child pornography,[6] we

---

[6] This evidence includes the images of the obviously underage and prepubescent girls in exhibits 3, 4, and 7, counts on which Gerron did not challenge the sufficiency of the evidence on age, along with the images of the obviously underage and either prepubescent or early pubescent girls in the State's extraneous-offense evidence. *Cf. Cox v. State,* --- S.W.3d ---, ---, 2016 WL 4254151, at *5 (Tex. App.—Houston [1st Dist.] Aug. 11, 2016, no pet. h.) ("Appellant's possession of child pornography constitutes some proof that Appellant intended to solicit more child pornography. … Appellant's possession of pornography was some proof that he is sexually attracted to prepubescent girls."). It further includes the download log, which contains

conclude that the trial court's error in allowing Ludvigsen's testimony about the ages of the girls did not have a substantial or injurious effect or influence on the jury's verdict. Likewise, after considering the constitutional-error factors, we conclude beyond a reasonable doubt that the confrontation error regarding Ludvigsen's testimony about the ages of the girls in exhibits 5, 8, and 10 did not contribute to the conviction on those counts. We overrule issue three.

## EXCLUSION OF EVIDENCE

In issue eight, Gerron complains that the trial court abused its discretion by excluding several books that Gerron contends contain images similar to those for which he was being tried and that could be lawfully obtained at a public bookstore such as Barnes and Noble. Nine books were admitted at a pretrial hearing for the limited purpose of Gerron's challenge to the constitutionality of the statute.

During trial, a law-enforcement officer was asked whether she was familiar with several books that Gerron's trial counsel had presented to her. At that time, Gerron's trial counsel was asking the officer whether or not she knew of the existence of those types of books and whether she believed that they contained child pornography. When Gerron's trial counsel asked the officer to look through the books and show which ones she believed constituted child pornography, the State objected that the books were not relevant, and the trial court sustained the objection. Gerron later made an offer of proof

---

titles such as: "Preteen art"; "Young Model Hall of Fame"; "15yo Jessy Gets … By Old Perv"; "More Pictures of Sexy Young Teens!"; "anita_12y"; "Child Models"; "Very Young Chick Stripping On Poker Table"; "HOT 14 year old girl taking picture of herself in the mirror"; "14yo Girl Has A Crazy Orgasm!"; "Anna 12yo"; "Jailbait-lover.com"; and "47 Pictures of Very Young Girl."

of four of the books. The officer was questioned as to whether she was familiar with the four books, and she testified that she was not familiar with them. The State further argued that the books were not admissible because the officer had never seen them.

Evidence that is not relevant is inadmissible. TEX. R. EVID. 402; *see Montgomery v. State*, 810 S.W.2d 372, 386 (Tex. Crim. App. 1990) (op. on reh'g). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401.

Gerron argues that his defensive theory was to argue that the images on his computer did not portray a lewd exhibition of genitals. Gerron contends that the books were vital to show that the images in the books were not lewd, and therefore the images he possessed were not lewd because they were "strikingly similar." Because the law-enforcement officer had testified that she believed the images for which Gerron was being tried showed a lewd exhibition, Gerron sought the introduction of the books and the ability to question the officer on what she would define as lewd.

We agree with the trial court that the books were not relevant to the determination of whether the ten images for which Gerron was being tried portrayed a lewd exhibition of genitals. The images in the excluded books are not "strikingly similar" to all but potentially one of the ten images. And even if the photographs in the books were similar, there was no evidence or showing that the books had any relation to Gerron. Gerron did not possess the books, and there was no evidence that he had ever seen them or otherwise knew of their existence. The books do not make the photographs for which Gerron was

being tried to be more probable or less probable to portray a lewd exhibition of the genitals than it would be without the admission of the books. Thus, the trial court did not abuse its discretion by refusing to admit the four books. We overrule issue eight.

## CUMULATION ORDER

In his ninth issue, Gerron complains that the trial court erred by ordering that his sentences be cumulated because there was insufficient evidence that the offenses occurred after September 1, 2005 and because the trial court's oral pronouncement was insufficient.

### *Date of Offenses*

Penal Code section 3.03 provides for the cumulation of sentences for certain offenses. *See* TEX. PENAL CODE ANN. § 3.03 (West Supp. 2014). In 2005, subsection 3.03(b)(3) was amended to allow the trial court to cumulate sentences for child-pornography convictions; the amended statute became effective on September 1, 2005 and includes only offenses on which every element was committed on or after September 1, 2005. Act of May 23, 2005, 79th Leg., R.S., ch. 527, §§ 1, 3, 2005 Tex. Gen. Laws 1429, 1430.

The trial judge has discretion to cumulate sentences under subsection 3.03(b)(3) if there is "some evidence" that the offenses occurred after September 1, 2005. *See Bonilla v. State*, 425 S.W.3d 811, 817 (Tex. Crim. App. 2014) (setting forth "some evidence" standard under subsection 3.03(b)(2)(A)). The photographs for which Gerron was tried were found on his computer after it was seized on June 8, 2009.

Gerron came to the attention of law enforcement as part of a nationwide investigation of a company that was operating websites where customers could purchase subscriptions to access various child-pornography websites. Gerron was identified as a customer having purchased a thirty-day subscription in 2006 to a website called "LS Land," which is commonly known for child pornography.

When confronted by law enforcement, Gerron admitted purchasing the images from LS Land and from Low Mania, another website similar to LS Land. Additionally, the Azureus log indicated that Gerron had searched for and downloaded videos and photographs that appeared to likely constitute child pornography in 2007. There was no evidence that the images were downloaded before 2006.

Although there was no evidence of the exact dates that the images for which Gerron was tried were downloaded, we conclude that the evidence is sufficient to support the trial court's conclusion that the images were downloaded after September 1, 2005. We do not find that the trial court erred or abused its discretion in cumulating the sentences on this basis.

*Oral Pronouncement of Cumulation Order*

Gerron further argues that the trial court's pronouncement of the cumulation order was insufficient. When the trial court announced its intention to cumulate the sentences, the trial court stated:

> As part of the judgment, I hereby order that all 9 sentences run consecutively, that is one after the other.
>
> The defendant is to receive one day credit for jail time served. Therefore, the defendant will be [sic] begin serving the nine-year prison sentence

assessed as to Count Two. When that's completed, he'll begin serving the nine-year prison sentence assessed as to Count Three. When that's finished, he'll begin serving the prison sentence of nine years as to Count Four and likewise until all counts have been served, all 81 years.

The trial court entered one judgment that included counts two through ten, and the punishment assessed in the judgment states: "9 years TDCJID on each count (counts two thru [*sic*] ten inclusive) shall be served consecutively, one after the other, for a total of 81 years."[7]

Gerron contends that the trial court's oral pronouncement was insufficient because it did not cite the number of any of the convictions, the name of the convicting court, or the conviction date. The State replies that the cases relied on by Gerron to support his contention apply to sentences that were stacked upon prior sentences from prior convictions, not multiple counts that were all before the trial court at the same time. *See, e.g., Ex parte Davis,* 506 S.W.2d 882, 883-84 (Tex. Crim. App. 1974) (dealing with stacking a sentence on prior conviction from another court but also noting that those requirements are "not absolute."); *Phillips v. State,* 488 S.W.2d 97, 98-100 (Tex. Crim. App. 1967) (noting that purpose of specificity is to allow Department of Corrections to carry out court's

---

[7] The Court of Criminal Appeals has recommended five requirements for cumulation orders: (1) the trial court number of the prior conviction, (2) the correct name of the court where the prior conviction was taken, (3) the date of the prior conviction, (4) the term of years of the prior conviction, and (5) the nature of the prior conviction. *Ward v. State,* 523 S.W.2d 681, 682 (Tex. Crim. App. 1975). It is well settled that inclusion of all of the recommended elements is not mandatory. *See Banks v. State,* 708 S.W.2d 460, 461 (Tex. Crim. App. 1986); *Williams v. State,* 675 S.W.2d 754, 764 (Tex. Crim. App. 1984) (op. on reh'g). To be valid, a cumulation order "should be sufficiently specific to allow the Texas Department of Criminal Justice — Institutional Division … to identify the prior with which the newer conviction is cumulated." *Ex parte San Migel,* 973 S.W.2d 310, 311 (Tex. Crim. App. 1998).

orders). We agree with the State, conclude that the oral pronouncement was adequately specific, and therefore overrule issue nine.

## ADMISSION OF ANIME IMAGE DURING PUNISHMENT PHASE

In his tenth issue, Gerron complains that the trial court abused its discretion in the admission of an anime image that depicted an adult male ejaculating into the mouth of a very young child. The image was one of many that had been found on Gerron's computer. The trial court had excluded the image during the guilt-innocence phase but admitted it during punishment. Gerron argues that the image should have been excluded under Rule 403.

We assume without deciding that the trial court erred by admitting the anime image. An erroneous admission of evidence such as this will result in reversal only if that error affected a substantial right of the defendant. *See* TEX. R. APP. P. 44.2(b). A substantial right is affected when the evidence, viewed in light of the record as a whole, had a substantial and injurious influence in determining the jury's verdict. *King*, 953 S.W.2d at 271. Viewing the record as a whole, including voir dire, the evidence, including the extraneous-offense evidence of over 11,000 photographs of actual children in Gerron's possession, the arguments of counsel, and the jury charge, we conclude that the admission of this one computer-generated image did not have a substantial and injurious influence in determining Gerron's punishment. We overrule issue ten.

## CONCLUSION

Having overruled all of Gerron's issues, we affirm the trial court's judgment of conviction.

REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
      (Chief Justice Gray dissenting)
Affirmed
Opinion delivered and filed October 26, 2016
Publish
[CRPM]

