**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00371-CR**
_____

**BRANDON MICHAEL HAMEL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 1st District Court**
**Jasper County, Texas**
**Trial Cause No. 14683JD**
_____

**MEMORANDUM OPINION**

A grand jury indicted Appellant, Brandon Michael Hamel, ("Hamel") for two

offenses: (1) sexual assault of a child in cause number 14546JD, and (2) possession

of child pornography in cause number 14683JD. *See* Tex. Penal Code Ann. §§

22.011(a)(2), 43.26(a)(1).

The first indictment, in cause number 14546JD, alleged that Hamel

intentionally and knowingly caused the penetration of the sexual organ of J.D., a

child who was younger than seventeen years of age, by defendant's sexual organ.[1] The appeal of cause number 14546JD will be resolved through a separate memorandum opinion issued by this court.[2] The second indictment, in cause number 14683JD, alleged that Hamel intentionally and knowingly possessed visual material that visually depicted, and which the defendant knew visually depicted a child who was younger than eighteen years of age at the time the image of the child was made, engaging in sexual conduct, namely actual sexual intercourse. *Id.* § 43.26(a)(1).

Hamel pleaded "not guilty." The cases were consolidated for trial and heard by a single jury. The jury found Hamel guilty in both cases. Hamel elected to have the trial court determine his sentence, and the court sentenced him to twelve years' confinement on the sexual assault case in cause number 14546JD and five years' confinement on the possession of child pornography case in cause number 14683JD, with the sentences to run concurrently. On appeal, Hamel alleges that the evidence is insufficient to support his conviction for possession of child pornography. We affirm.

---

[1] To protect the minor child's identity, we refer to her by her initials and we refer to her family members by their relationship to the victim. *See*. Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[.]"). Additionally, we use pseudonyms to identify non-law-enforcement witnesses to protect their privacy.

[2] *See Hamel v. State*, No. 09-23-00370-CR.

## Evidence at Trial

"Candace" testified that she worked at a tire store in Kirbyville when she saw Hamel and J.D. at the store attempting to buy a tire in December of 2021. While Hamel was having a casual conversation with Candace, he told Candace that he was taking J.D. to meet Hamel's mother because Hamel and J.D. were going to be married. Candace said she was concerned because she thought J.D. looked as though she were only around twelve to fourteen years old. Hamel and J.D. had to leave the store and return later in the day after their new tire was delivered. Candace testified that while Hamel and J.D. were away, she checked her local Facebook page and discovered that J.D.'s mother was searching for her, saying she thought J.D. had run away. Candace then went to the police station to report what she had learned to let the police handle the situation.

Officer Richard Going was on duty for the Kirbyville Police Department the day J.D. was reported missing. Going testified that he received the report of the runaway and decided to go by the only motel in town to see whether Hamel and J.D. were there. Going said he saw the car that matched the description he had been given and approached the room where Hamel and J.D. were staying. After summoning backup and waiting for it to arrive, Going asked Hamel to step outside, read him his *Miranda* rights, and questioned him while another officer went inside the motel room to speak with J.D. Going said that Hamel asked him if he knew how old J.D. was

and Going told him he was told she was fifteen years old. In response, Going said Hamel told him, "[w]ell, I guess I'm going to jail." When Going asked him why he would be going to jail, Hamel said "because we had sex."

Mother testified that J.D. was a lovable but gullible child who was homeschooled. Mother received a text message from J.D. on the morning of December 27, 2021, saying J.D. was unhappy and was leaving home with her boyfriend. Mother said she searched the house and then called 9-1-1 to make a report. Mother then began contacting relatives and friends and posting on social media that she was searching for J.D. She then received a call from Candace asking for more photos to verify that she had seen J.D. Mother sent the photographs and told Candace to call the police if it turned out to be J.D. whom she had seen. Mother received a call from the police at about 1:00 p.m. that they had found J.D. at a motel and Mother and her husband went to the motel and picked up J.D.

In December 2021, Lieutenant Jason Hollyfield was an investigator with the Jasper County Sheriff's Office. Hollyfield testified that he received a call about a runaway child at the motel in Kirbyville. Hollyfield stated that as the lead investigator on the case, he gathered evidence, including the cell phones, and learned that Hamel had come to Texas from Virginia and that Hamel had admitted to officers on the scene that he had sex with J.D. Hollyfield had Hamel taken into custody at the scene. After J.D.'s parents arrived, Hollyfield told J.D.'s parents to take J.D. to

St. Elizabeth Hospital in Beaumont to have a S.A.N.E. (Sexual Assault Nurse Examiner) exam done. Hollyfield said his investigation found a doll and stuffed animals in Hamel's car and child-like clothing items in the motel room.

On January 5, 2022, when Hollyfield interviewed Hamel, Hamel gave Hollyfield the passcodes for his phones that Hamel had relinquished to law enforcement at the motel. Hollyfield eventually submitted the phones to the Department of Public Safety Forensics Lab. Hamel told Hollyfield that he met J.D. through a messaging application. Hamel told Hollyfield that J.D. told him that she was twenty-three years old but he said he should have asked her for identification. Hamel told Hollyfield that, when he picked up J.D. during the night to take her to Virginia, she climbed in and out of her bedroom window to get her things so that they wouldn't awaken Mother. Hamel also admitted that he had sexual intercourse with J.D. and videoed it with his phone. Hollyfield obtained a DNA sample, which Hamel volunteered.

Special Agent Derek Peterson, with the Texas Department of Public Safety ("DPS"), testified that he is a forensic computer analyst for the DPS. During his analysis of the cell phones, Peterson retrieved videos of Hamel having sexual intercourse with J.D. His analysis also uncovered text messages in which Hamel asked J.D. to send him nude photos, and he found at least one photo of J.D. in her bathtub showing her nude breasts that Hamel had requested. He found other photos

5

on the phone that J.D. had sent showing elementary school-age items in the background. Peterson identified a nude photo taken by Hamel's phone in J.D.'s bedroom on December 19, nearly ten days before J.D. left her home with Hamel. Peterson then identified four nude photos of J.D. taken from Hamel's phone, which were admitted without objection. Finally, Peterson testified that he found a video on Hamel's phone showing Hamel having sexual intercourse with a person he identified as J.D.

Niya Knighton, a forensic nurse at Christus St. Elizabeth Hospital, testified that she examined J.D. at the hospital and took evidence swabs from J.D. for later DNA analysis. Knighton said that J.D. told her that Hamel had had sexual intercourse with her. Knighton also collected J.D.'s underwear, tights, and t-shirt J.D. was wearing that day.

Michelle Turner, a forensic scientist with the DPS Crime Lab in Houston, testified that she received the evidence swabs taken from J.D.'s body and the swab taken from Hamel. She said her analysis determined that the vaginal swabs, thigh swabs and panty swabs from J.D. contained DNA belonging to Hamel with a high probability.[3] A report of the results of her testing was admitted without objection.

---

[3] According to Turner, it was more than 34.2 septillion times more likely that the mixture profile she obtained came from J.D. and Hamel than from J.D. and one unrelated, unknown individual.

J.D. testified that she met Hamel through a messaging app called "KIK" in January 2021. J.D. said they shared an interest in anime entertainment. Since Hamel said he was twenty-four years old (he later testified he was actually thirty-one years old), J.D. told him she was twenty-three years old to be close to the same age. J.D. says she told him that she had parental controls on her phone that would cut off at 9:00 p.m. each night. J.D. testified that she began to like Hamel, he invited her to move to Virginia with him and asked her to send him nude photos of herself. J.D. said she sent him nude photos and she had sex with him. J.D. said Hamel said he was coming to Dallas to visit his grandfather and then he would come see her while in Texas. Hamel gave J.D. a ring and said they were going to get married but J.D. did not want her Mother to know. J.D. never told Hamel that she was only fifteen years old.

Brandon Hamel testified in his own defense. He said he communicated with J.D. through the "KIK" app and then switched to the "Discord" app. J.D. told him she was twenty-three and they began communicating through the app every day for the last six months of 2021. Hamel testified that J.D. told him she was in college. Hamel testified he was thirty-one years old at that time and that he had fallen in love with J.D. Hamel said he arrived at J.D.'s house at 12:30 at night, she left the house to meet him, and they went into a dog kennel in her back yard to visit for an hour. After spending Christmas in Fort Worth, Hamel returned to J.D.'s home after 10:00

7

p.m. and knocked on her bedroom window to attempt to take J.D. to Virginia. Hamel admitted that he had nude photos of J.D. on his phone and that he videoed himself having sexual intercourse with J.D. but that she had told him she was twenty-three years old.

Issue Presented

In one issue, Hamel asserts that the evidence is insufficient to support his conviction for possession of child pornography. Section 43.26 of the Texas Penal Code sets out the offense of possession of child pornography:

(a) A person commits an offense if:

(1) the person knowingly or intentionally possesses, or knowingly or intentionally accesses with intent to view, visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct, including a child who engages in sexual conduct as a victim of an offense under Section 20A.02(a)(5), (6), (7), or (8); and
(2) the person knows that the material depicts the child as described by Subdivision (1).

Tex. Penal Code Ann. § 43.26(a).

"Sexual conduct" includes deviate sexual intercourse, sexual contact, and sexual intercourse. Tex. Penal Code Ann. § 43.25(a)(2).

Hamel's indictment alleged that he "intentionally and knowingly possess[ed] visual material that visually depicted, and which the defendant knew visually depicted a child who was younger than 18 years of age at the time the image of the child was made, engaging in sexual conduct, namely actual sexual intercourse[.]"

8

## Standard of Review

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether a rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We defer to the factfinder's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the factfinder resolved such facts in favor of the verdict and defer to that resolution. *See Brooks v. State*, 323 S.W.3d 893, 899 n.13 (Tex. Crim. App. 2010) (citing *Jackson*, 443 U.S. at 319). The appellate court does not reweigh the evidence, determine the credibility of the evidence, or substitute its own judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The factfinder is the sole judge of the weight of the evidence and credibility of the witnesses, and the factfinder may believe all, some, or none of the testimony presented by the parties. *See Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018); *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (citations omitted); *Clark v. State*, 573 S.W.3d 367, 372 (Tex. App.—Beaumont 2019, no pet.); *Hill v. State*, 161 S.W.3d 771, 775 (Tex. App.—Beaumont 2005, no pet.).

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *See Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). "Intent may also be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). In determining the sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution[] and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

Analysis

In his sole issue, Hamel claims that the evidence is insufficient to support the conviction because the video image "appears to depict two persons involved in sexual intercourse, but there is no way to tell from the image whether either party in the image is a minor." Based upon this assertion, Hamel concludes that there is insufficient evidence to support the jury's verdict.

The determination of the age of a child in a possession-of-child-pornography case is an issue for the factfinder's determination. *Gerron v. State*, 524 S.W.3d 308, 318 (Tex. App.—Waco 2016, pet. ref'd) (citing *Carter v. State*, No. 05-05-01424-CR, 2006 Tex. App. LEXIS 10687, at *14 (Tex. App.—Dallas Dec. 14, 2006, pet.

10

ref'd) (mem. op., not designated for publication); Section 43.25 of the Texas Penal Code provides five methods by which the court or jury may make an age determination:

> (1) personal inspection of the child;
>
> (2) inspection of the photograph or motion picture that shows the child engaging in the sexual performance;
>
> (3) oral testimony by a witness to the sexual performance as to the age of the child based on the child's appearance at the time;
>
> (4) expert medical testimony based on the appearance of the child engaging in the sexual performance; or
>
> (5) any other method authorized by law or by the rules of evidence at common law.

Tex. Penal Code Ann. § 43.25(g).

The evidence, as noted above, included (1) testimony from Special Agent Peterson that the video showed Hamel and J.D. having sexual intercourse; (2) testimony from J.D. that she and Hamel engaged in sexual intercourse, which Hamel recorded on his phone; and (3) the testimony of Hamel himself, who identified the video in evidence as that of him having sexual intercourse with J.D. Under the factors the trier of fact shall consider set forth in Texas Penal Code section 43.25(g), (1) the child testified in person before the jury so they could compare their personal observation against the visual depiction; (2) the jury was given the video exhibit, admitted without objection, to personally view and compare to J.D.'s in-person

11

testimony; (3) Special Agent Peterson, among others, testified that J.D. appeared to be underage in person, in the video and photos; (4) there was no medical testimony to attempt to verify the age of J.D. in the video (but this factor alone is not dispositive); and (5) other methods of evidence admissible by law which, in this case, include J.D.'s testimony about her actual age at the time and the evidence of juvenile items in photos sent to Hamel before the sexual intercourse. Tex. Penal Code Ann. § 43.25(g). *See Gerron*, 524 S.W.3d at 318 ("Determination of the age of a child in a possession of child pornography case is a fact issue for the factfinder to decide.").

The jury viewed the video and was permitted to use common sense and knowledge to draw the inference that it was Hamel and J.D. who appeared in the video engaged in sexual intercourse and that Hamel knew J.D. was underage. *See Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014) ("[T]he trier of fact may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence."). Having seen the video in evidence themselves and having heard both Hamel and J.D.'s testimony that it was Hamel and J.D. having sexual intercourse, along with Special Agent Peterson's testimony that J.D. was obviously underage, the jury had sufficient evidence to support its verdict. *Id.* As an appellate court, we will not reweigh the

12

evidence, determine the credibility of the evidence, nor substitute our own judgment for that of the factfinder. *See Williams*, 235 S.W.3d at 750.

We overrule Hamel's sole issue.

Conclusion

Having overruled Hamel's sole issue, we affirm the trial court's judgment.

AFFIRMED.


JAY WRIGHT<br>Justice


Submitted on July 8, 2025
Opinion Delivered August 27, 2025
Do Not Publish

Before Golemon, C.J., Wright and Chambers, JJ.