

# IN THE
# TENTH COURT OF APPEALS

## No. 10-16-00048-CR

KENNETH BUTLER,

                                                                Appellant

 v.

THE STATE OF TEXAS,

                                                                Appellee


From the County Court at Law
Navarro County, Texas
Trial Court No. C35834-CR


## MEMORANDUM  OPINION


A jury convicted Appellant Kenneth Butler of possession of less than one gram of methamphetamine, and the trial court sentenced him to five years' community supervision. The methamphetamine was discovered in Butler's pocket when he was being treated for injuries he sustained after wrecking his motorcycle. Butler appeals in two issues. We will affirm.

## *Denial of Motion for Mistrial*

In his first issue, Butler asserts that the trial court erred in denying his motion for mistrial. Butler specifically complains that a mistrial should have been granted after the State was allowed to introduce evidence of an extraneous offense. The DPS Trooper who investigated Butler's wreck, LaTonya Sadler, was questioned by the prosecution regarding the actions she took in her investigation. Sadler replied: "Those actions are is I went ahead—after I went through the defendant's criminal history, is I went through and I seen that the defendant had a lengthy criminal history." Butler objected and requested a limiting instruction. The State agreed that a limiting instruction to the jury would be appropriate, and the judge admonished the jury to disregard Sadler's statement. Butler additionally moved for a mistrial, which the judge denied.

The denial of a motion for mistrial, which is appropriate for "highly prejudicial and incurable errors," is reviewed under an abuse-of-discretion standard. *See Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003) (quoting *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)); *see also Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

> [T]he question of whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis. A mistrial is the trial court's remedy for improper conduct that is "so prejudicial that expenditure of further time and expense would be wasteful and futile." In effect, the trial court conducts an appellate function: determining whether improper conduct is so harmful that the case must be redone. Of course, the harm analysis is conducted in light of the trial court's curative instruction. Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.

*Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (quoting *Ladd*, 3 S.W.3d at 567); *see also Archie v. State*, 221 S.W.3d 695, 699–700 (Tex. Crim. App. 2007). Thus, the

appropriate test for evaluating whether the trial court abused its discretion in overruling a motion for mistrial is a tailored version of the test originally set out in *Mosley v. State*, 983 S.W.2d 249, 259–60 (Tex. Crim. App. 1998). *See Hawkins*, 135 S.W.3d at 77. "The *Mosley* factors are: (1) the prejudicial effect, (2) curative measures, and (3) the certainty of conviction absent the misconduct." *Id.*; *see Mosley*, 983 S.W.2d at 259; *see also Brinegar v. State*, No. 10-14-00195-CR, 2015 WL 6777445, at *4 (Tex. App.--Waco Nov. 5, 2015, pet. ref'd) (mem. op., not designated for publication).

The asking of an improper question will seldom call for a mistrial because any error can usually be cured by an instruction to disregard. *Wood*, 18 S.W.3d at 648. In fact, the Texas Court of Criminal Appeals has stated: "Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer, even one regarding extraneous offenses." *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). Testimony that refers to or implies the existence of extraneous offenses can be cured by an instruction to disregard by the trial court, unless the evidence was so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind. *Harris v. State*, 164 S.W.3d 775, 783 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Butler makes no allegation that Sadler's testimony was made "with calculated intent" to inflame or mislead the jury or that Sadler's testimony was embellished in any manner.

Considering the *Mosley* factors, we cannot say that the trial court abused its discretion in denying the motion for mistrial. Any prejudicial effect from Sadler's

testimony was curable because the comment was quite brief, it did not identify any specific criminal activity, and it was not repeated. The trial court's instruction to disregard, which was the proper curative measure in this instance, was prompt and will ordinarily cure any error. *See Wesbrook v. State,* 29 S.W.3d 103, 115–16 (Tex. Crim. App. 2000). Finally, the statement was not so inflammatory as to undermine the efficacy of the trial court's instruction to disregard. *See Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); *see also Martinez v. State*, No. 10-13-00431-CR, 2015 WL 5092672, at *10 (Tex. App.—Waco Aug. 27, 2015, no pet.) (mem. op., not designated for publication). The trial court did not abuse its discretion in denying Butler's motion for mistrial. Butler's first issue is overruled.

### *Remote Conviction*

In his second issue, Butler argues that the trial court erred in allowing the prosecutor to introduce evidence of Butler's felony DWI conviction that occurred over ten years prior to the date of trial. The violation of an evidentiary rule that results in the erroneous admission of evidence constitutes non-constitutional error. *See Martin v. State*, 176 S.W.3d 887, 897 (Tex. App.—Fort Worth 2005, no pet.). Under Rule of Appellate Procedure 44.2(b), an appellate court must disregard non-constitutional error unless the error affected the defendant's substantial rights. TEX. R. APP. P. 44.2(b); *see also Gerron v. State*, 524 S.W.3d 308, 325 (Tex. App.—Waco 2016, pet. ref'd). A substantial right is affected when the erroneously admitted evidence, viewed in light of the record as a

whole, had "a substantial and injurious effect or influence on the jury's verdict." *Id*. In assessing the likelihood that the jury's decision was improperly influenced, we must consider the entire record, including such things as the testimony and physical evidence admitted, the nature of the evidence supporting the verdict, the character of the error and how it might be considered in connection with other evidence, the jury instructions, the State's theories, defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Barshaw v. State*, 342 S.W.3d 91, 94 (Tex. Crim. App. 2011). Assuming without deciding that the trial court erred in admitting Butler's prior DWI conviction, we find that the error did not affect Butler's substantial rights in light of the strong evidence of his guilt.

The evidence at trial established that Butler crashed his motorcycle after hitting a deer. A passing motorist called 9-1-1 after noticing the dead deer and Butler's motorcycle on the side of the road. The motorist also reported that Butler was lying in the ditch beside the road and that he was not moving. Responding emergency medical personnel noted that Butler had a serious head injury and that he was in and out of consciousness. The medical personnel had to remove six or seven layers of clothing, some needing to be cut off, in order to ascertain whether Butler had suffered other injuries. A black, plastic cigarette box, that Butler acknowledged was his, was found in the pocket of a shirt that was under an outer jacket and coveralls. The box was given to the deputy on the scene, who opened it to see if it contained Butler's identification. In the box, the deputy found cigarettes and a baggy containing a crystalline substance that was later confirmed by the

lab to be methamphetamine. Also recovered from the scene was Butler's wallet that contained approximately one hundred dollars. Butler was taken by helicopter to a hospital for treatment, and he was subsequently arrested for possession of less than one gram of methamphetamine. Butler was semi-conscious when transferred to the hospital, and his medical records reflect that he was combative with medical personnel and had to be restrained. Blood tests revealed the presence of cannabinoids and opiates in Butler's system, although he denied using any substance containing opiates. The blood tests did not reveal the presence of methamphetamine in his system, and methamphetamine is neither an opiate nor a byproduct of marijuana. Butler's father testified that he went to the scene of the wreck four days later to look for Butler's cell phone. He walked around the area calling Butler's phone from his own cell phone but never heard it ring.

While Butler testified that he remembered everything that occurred prior to his collision with the deer, he was unclear about the time the wreck occurred. Butler first testified that the sun was shining when he arose the morning of the wreck and that he left his brother's house at 6:00 a.m. When the prosecutor reminded him that the 9-1-1 recording noted the time that the wreck was reported as 6:04 a.m., Butler then stated that he left his brother's house at 5:30 and hit the deer at around 6:00 a.m. Butler testified that he knew nothing about the methamphetamine that was recovered from the cigarette box, but he remembered putting the cigarette box in a storage compartment on the motorcycle and not in his shirt pocket. Butler also testified that he remembered placing his cell phone in the right front pocket of his jeans and that he never saw it again after the wreck.

Butler's theory about how the methamphetamine found its way into his pocket was that some unknown person must have placed it there. There was no evidence of the existence of such a person, merely Butler's supposition. Butler testified that he had no memory of anyone putting the box containing the methamphetamine in his pocket or taking his cell phone—he just assumed that those events occurred based upon "how everything looked." Some of the circumstances that Butler and his attorney identified to support his theory were: (1) Butler's motorcycle was in an upright position after the wreck, indicating that some unknown person picked it up; (2) Butler was combative with medical personnel when he arrived at the hospital, indicating that he was reliving his struggles with the unknown person; (3) the cuts on Butler's clothing where they had been removed by medical personnel at the scene of the accident did not line up properly, indicating that the unknown person disarranged Butler's clothing while planting the methamphetamine; (4) Butler's cell phone was not found, indicating that the unknown person stole it; and (5) officers found nothing with which Butler could have used the methamphetamine, such as a needle or a pipe. All of the circumstances were as likely, if not more likely, to have occurred without the intervention of an unknown person. Considering the weight of the evidence against Butler, we possess a fair assurance that the admission of the DWI conviction did not influence the jury or, at most, had only a slight effect on their verdict. Butler's second issue is overruled.

Having overruled both issues presented by Butler, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
　　　Justice Davis, and
　　　Justice Scoggins
Affirmed
Opinion delivered and filed May 30, 2018
Do not publish
[CR25]

