**Affirmed and Opinion Filed August 27, 2020**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-00082-CR**
**No. 05-19-00083-CR**
**No. 05-19-00084-CR**

**CASEY MICHAEL JONES, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F17-41184-V, F17-41185-V, and F17-41186-V**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Evans
Opinion by Justice Partida-Kipness

Appellant Casey Michael Jones appeals his conviction on three counts of possession of child pornography. In three issues, Jones complains the trial court abused its discretion by admitting extraneous child-pornography evidence and erred by upholding the magistrate's finding of probable cause for issuing the search warrant that resulted in the discovery of the three video files for which he was indicted. We affirm the judgment.

## BACKGROUND

At the time of his arrest, Jones lived in Mesquite, Texas with his wife, Lauren Jones, and a roommate, Michael Lira. The events leading to his arrest, however, began in February or March 2015 with a Russian Ministry of Interior operation to combat the sharing of child pornography on the internet. During that operation, the Russian Ministry identified a number of IP addresses[1] downloading child pornography from various computers around the globe. The Russian Ministry forwarded the results of its operation to INTERPOL, the International Criminal Police Organization. INTERPOL then disseminated the information to the countries in which the suspect IP addresses were located. Information concerning one IP address was sent to the Dallas office of the Department of Homeland Security Investigation (HSI). That information consisted of (1) a screenshot of the computer screen attached to the IP address as it was downloading a video, and (2) the video that was downloaded, which depicted child pornography. The video file reflected identifying information including the IP address of the computer that was downloading the video (76.186.110.72), the country in which the IP address was located (the United States), and the user name of the user who was downloading the video ("Blackest_Waters"). The video file had the file name: [pthc] l0yo Beauty

---

[1] An IP address is "the numeric address of a computer on the internet." *IP address, Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/IP%20address (last visited August 24, 2020); An Internet-protocol address, or IP address, is "the 10-digit identification tag used by computers to locate specific websites." *Internet-protocol address*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Preteen Blowjob-Anal-Cumshot With Daddy 2011 NEW (www.jailbaits-forum.com).avi. "PTHC" stands for "preteen hardcore" and is indicative of child abuse material. The Russian Ministry discovered the IP address sharing child pornography on the "Gnutclla2" network.

Special Agent Michael Cestare ("SA Cestare") received the tip at HSI. On July 31, 2015, he contacted Detective Chris Quigley of the Mesquite Police Department's Internet Crimes Against Children task force. SA Cestare advised Detective Quigley about the tip from the Russian Ministry through INTERPOL. He explained that INTERPOL contacted HSI in reference to IP address 76.186.110.72, which was geo located to Mesquite, Texas, and involved an individual trading child pornography on-line. HSI had determined that IP address 76.186.110.72 was owned by Time Warner Cable (TWC). SA Cestare sent TWC a Department of Homeland Security summons for subscriber information on IP address 76.186.110.72. TWC's response to the summons identified the IP address as allocated to Casey Jones located at 1819 Longview Street, Dallas, Texas 75149. The TWC account was activated on May 10, 2014 and had three phone numbers associated with the account.

Detective Quigley verified the address and resident information obtained by SA Cestare by checking Dallas water account files and Dallas County Appraisal District ("DCAD") property tax files. The DCAD files showed Casey Jones as the listed owner of 1819 Longview Street since 2014, and a screen shot of the water file for that address showed the water account had been in the name of Casey Jones since

May 2014 with a phone number that matched one of the phone numbers associated with the TWC account. SA Cestare conducted surveillance at 1819 Longview Street on August 5, 2015. Through that surveillance, he further confirmed Jones's residence at the address.

SA Cestare and Detective Quigley took additional steps to investigate any links between Jones, his residential address, and IP address 76.186.110.72. Detective Quigley ran IP address 76.186.110.72 through the Internet Crimes Against Children law-enforcement website (ICACCOPS) and saw that it had recently been seen on three different file-sharing networks: BitTorrent on March 2, 2015; Gnutella on April 17, 2015; and EMule on April 20, 2015. Detective Quigley then found the Globally Unique Identifier (GUID)[2] for IP address 76.186.110.72 on the eMule network. The GUID for that IP address in EMule was linked to the username of Blackest_Waters, which matched the username found on the pornographic video identified by the Russian Ministry. Detective Quigley then searched the GUID in the Gnutella network and found another IP address—76.184.242.15—linked to that GUID. This address had last been seen on Gnutella on June 26, 2015, on EMule on June 28, 2015, and on BitTorrent on June 6, 2015. On August 8, 2015, SA Cestare sent another summons to TWC, this time, requesting any IP address that was

---

[2] "A globally unique identifier (GUID) is a 128-bit number created by the Windows operating system or another Windows application to uniquely identify specific components, hardware, software, files, user accounts, database entries and other items." *Globally unique identifier (GUID)*, *techopedia.com*, https://www.techopedia.com/definition/1208/globally-unique-identifier-guid (last visited August 24, 2020).

currently being leased by Jones at 1819 Longview Street. On August 25, 2015, TWC responded to the summons and provided SA Cestare with IP address 76.184.242.15. That IP address was the same IP address Detective Quigley had seen on ICACCOPS that was also linked to the GUID for IP address 76.186.110.72 and username Blackest_Waters.

After confirming Jones resided at 1819 Longview Street, linking the IP address identified by the Russian Ministry to that residence and to Jones's internet account, linking that IP address and its GUID to the username identified by the Russian Ministry and to three file-sharing sites, and linking a second IP address to the GUID, residential address, and TWC internet account, Detective Quigley believed there was probable cause that a user of the computer located at 1819 Longview Street was a collector of child pornography and that evidence of the offenses of distributing, receiving, and possessing child pornography under section 43.26 of the Texas Penal Code was located at 1819 Longview Street. Detective Quigley submitted a seven-page affidavit for search warrant to a Dallas County magistrate judge and obtained a search warrant for Jones's residence.

On the morning of September 10, 2015, Detective Quigley, SA Cestare, and other members of HSI and the Mesquite Police Department executed the search warrant. The team knocked on the door of the house and Jones's wife, Lauren, opened the door. Jones, Lira, and the Joneses' three-year-old daughter were also home that morning. Jones was at his computer when the search-warrant team entered

the house. Jones agreed to voluntarily speak with Detective Quigley and SA Cestare. The rest of the team remained at the house to conduct the search while Detective Quigley and SA Cestare drove Jones to the police station to be interviewed. The team collected every electronic device at the house, and Detective Quigley later ran forensics on all the devices. The forensic process involved making a duplicate of each hard drive and then analyzing the duplicate.

No child pornography was found on Lauren's computer or on Lira's computer. But child pornography was found on one of the two hard drives in Jones's computer. Forensic analysis of the duplicate hard drive showed Jones used two different file-sharing networks—Gnutella and BitTorrent—to search for and download files. On Gnutella, Jones used peer-to-peer sharing software called "Shareaza" to download files. Using forensic-analysis software, Detective Quigley pulled out some of the search terms that appellant had used on these file-sharing networks and also located three videos: video 7i, video 7y, and video 7w.[3] Each video depicted a child younger than eighteen engaging in sexual conduct, specifically, deviate sexual intercourse. Each video had been saved as a ".dot" file and buried within multiple folders. To access these files, one would have to open the "games" folder, then the "World of Warcraft" folder, then the "data" folder, then the "config" folder, and finally, the folder labeled, "9B." Because the "config" folder

---

[3] The full file names were 9bcb9f417s5s217s0c948a7i ("video 7i"), 9bcb9f417s5s217s0c948a7y ("video 7y"), and 9bcb9f417s5s217s0c948a7w ("video 7w").

normally contained files associated with operating systems and not images, a person searching for images likely would not know to look in the "config" folder.

Each of the three videos depicted child pornography. Video 7i is almost two hours long and consists of a number of videos "spliced together." Video 7y is a little under four minutes long, and video 7w is a little over twenty-five minutes long. The three videos depict multiple children of varying ages engaged in various sexual acts with adults and with other children. The children in the videos were under the age of eighteen and appeared to include children as young as six, eight, and ten years old. Based on these three videos, Jones was charged by three indictments with the intentional and knowing possession of videos depicting child pornography. *See generally* TEX. PENAL CODE § 43.26(a).

Jones sought to suppress the videos on the ground that the search warrant was not supported by probable cause, but the trial court denied the motion to suppress. At Jones's trial on the three indictments, Detective Quigley testified, as the State's only live witness, about the investigation and the three videos that were found in Jones's computer. Jones's recorded interview was also admitted into evidence and published to the jury. During that interview, Jones admitted that he used "Blackest_Waters" as a username on Facebook and for his Hotmail account. Jones equivocated during the interview about whether he ever viewed and downloaded child pornography. Initially, he admitted he had pornography in his computer but claimed he liked 18 to 30 year-olds. But he also admitted to using some of the

–7–

following search terms in file-sharing networks: teen; young; cheerleader; Lolita; preteen; and ages 5, 8, 13, 14, and 16. Similarly, Jones indicated he did not always preview files before downloading them, and deleted "questionable material" when he discovered it. But Jones also admitted to regularly previewing files before downloading them and said when he downloaded child pornography, he would change the file extension to ".dot," move it out of his shared folder, and bury it within layers of folders so that he could later get it to law enforcement.

During the direct examination of Detective Quigley, the prosecutor elicited no testimony about the role of the Russian government in Detective Quigley's investigation and avoided eliciting any testimony about any child pornography material found on Jones's computer other than video 7i, video 7w, and video 7y. The State carefully tailored its direct examination of Detective Quigley this way in light of Jones's motion in limine, which sought to exclude any mention of the Russian operation. During its cross-examination of Detective Quigley, however, the defense mentioned Russia for the first time and tried to elicit testimony to suggest that Jones had been framed by the Russian government. The cross-examination suggested the Russians either planted the three videos on Jones's computer or tricked him into downloading the videos such that Jones did not intentionally and knowingly possess the videos that were found in his computer. In an attempt to discredit the Russian operation, the defense also cross-examined Detective Quigley regarding what he knew about the Russian Ministry that sent the tip to INTERPOL, whether the

Russian Ministry was a spy agency, whether INTERPOL verified the Russian tip, and why Detective Quigley believed the Russian tip was reliable.

Following the cross-examination, the State made an offer proof, arguing the State should be permitted to question Detective Quigley regarding the facts and circumstances that lead Detective Quigley to obtain the search warrant, including the involvement of the Russian Ministry, INTERPOL, and HSI. The State contended this testimony was needed to rebut the false impression created by the defense as to how Russia obtained the video at issue and the reliability of the tip received from the Russian Ministry. The State also argued it should be permitted to present evidence to rebut Jones's allegations that Russia planted the video on his computer and that he had no knowledge or intent to possess videos 7i, 7w, and 7y. To accomplish these goals, the State sought leave to question Detective Quigley further on those issues and moved to admit State's Exhibits 29, 30, 31, 32, and 33.

State's Exhibit 30 was the video discovered by the Russian Ministry during its early 2015 operation. The Russian Ministry discovered that video being downloaded to the IP address associated with Jones's computer and residence. State's Exhibits 31 through 33 consisted of the list of search terms Jones previously used on the Shareaza file-sharing software, a list of a sampling of Torrent file fragments found on Jones's computer, and a sampling of the Shareaza library files in Jones's computer. The trial court denied the State's request to admit an exhibit

consisting of multiple pages of thumbnail images of the video files found on Jones's hard drive.

The trial judge gave the jury the following limiting instruction regarding State's Exhibit 30:

> State's Exhibits 29 and 30 are not being offered for the truth of the matters that are asserted therein. State's Exhibits 29 and 30 are being admitted to assist you, if they do assist you, in determining the witness's state of mind during the course of this investigation. And they cannot be considered by you for any other purpose whatsoever.

The trial judge gave the jury the following limiting instruction regarding State's Exhibits 31, 32, and 33:

> Members of the jury, evidence is about to be admitted before you in the form of descriptions of digital files or descriptions of videos or descriptions of pictures. The evidence may be considered by you to assist you, if it does assist you, in determining the defendant's motive, intent, knowledge, absence of mistake, lack of accident, or to rebut a defensive theory, if it does, but the evidence cannot be considered by you for any other purpose.

The jury found Jones guilty in each case as alleged in the indictments and assessed punishment at four years confinement on each charge. The State moved for a consecutive sentence, but the trial court denied that request. The court rendered judgment against Jones on all three counts and assessed punishment at four years confinement on each count to be served concurrently. This appeal followed.

## ANALYSIS

In his first two issues, Jones complains the trial court abused its discretion by admitting State's Exhibits 30, 31, 32, and 33. He maintains that evidence was

–10–

irrelevant and highly prejudicial. In his third issue, Jones contends evidence seized pursuant to the search warrant should have been suppressed because the warrant failed to demonstrate probable cause. We address each issue in turn.

## A.     Admission of Extraneous Child-Pornography Evidence

In his first two issues, Jones asserts the trial court abused its discretion by admitting evidence that he possessed child pornography other than the three videos charged in the indictments. Specifically, Jones complains that State's Exhibit 30 was irrelevant, and State's Exhibits 30, 31, 32, and 33 were more prejudicial than probative and, as a result, the trial court should have excluded those exhibits. Although Jones did not specifically mention Rule 403 below, he argued that the admission of these exhibits was much more prejudicial than probative, thus raising Rule 403 issues for the trial court's consideration. *See Anastassov v. State*, No. 05-19-00396-CR, 2020 WL 4669880, at \*5 (Tex. App.—Dallas Aug. 12, 2020, no pet. h.) (mem. op., not designated for publication) (citing TEX. R. EVID. 403).

### 1.     Standard of Review

We review the trial court's decision to admit evidence under an abuse of discretion standard. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). If a trial court's decision on the admissibility of evidence is within the zone of reasonable disagreement, it will not be reversed. *Id.*; *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011).

Generally, all relevant evidence is admissible under the Texas Rules of Evidence. TEX. R. EVID. 402. Under Rule 403, however, otherwise relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence. TEX. R. EVID. 403. Evidence is unfairly prejudicial when it has a tendency to suggest that a decision was made on an improper basis. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g). Rule 403 favors the admission of relevant evidence and presumes that relevant evidence is more probative than prejudicial. *Hernandez v. State*, 390 S.W.3d 310, 323 (Tex. Crim. App. 2012); *Montgomery*, 810 S.W.2d at 389.

> When undertaking a Rule 403 analysis, a trial court must balance
>
> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Of course, these factors may well blend together in practice.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). "Virtually all evidence that a party offers will be prejudicial to the opponent's case, or the party would not offer it." *Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007).

Thus, the question under rule 403 is not whether evidence is prejudicial, but whether it is unduly prejudicial. *Griffinwhite v. State*, No 05-19-00317-CR, 2020 WL 4880156, at *5 (Tex. App.—Dallas Aug. 20, 2020, no pet. h.) (mem. op., not designated for publication).

We review a trial court's ruling under Rule 403 for an abuse of discretion. *Pawlak v. State*, 420 S.W.3d 807, 810 (Tex. Crim. App. 2013). The trial court's ruling must be upheld if it is within the zone of reasonable disagreement. *Id.*; *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). We presume the trial court applied the balancing test unless the record affirmatively shows otherwise. *Anastassov*, 2020 WL 4669880, at *7 (citing *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998)). We also presume the probative value of relevant evidence substantially outweighs the danger of unfair prejudice from admitting the evidence. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007); *Montgomery*, 810 S.W.2d at 389. A Rule 403 ruling is rarely reversed because the trial court is in a superior position than this court to gauge the impact of relevant evidence. *Swegheimer v. State*, No. 02-17-00095-CR, 2018 WL 1528477, at *4 (Tex. App.—Fort Worth Mar. 29, 2018, pet. ref'd) (mem. op., not designated for publication) (citing *Gonzales v. State*, 477 S.W.3d 475, 481 (Tex. App.—Fort Worth 2015, pet. ref'd). Rule 403 envisions exclusion of evidence only when there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009).

## 2. Exhibits 31, 32, and 33 – search terms and file names from Jones's hard drive

In his first issue, Jones asserts the trial court abused its discretion by admitting State's Exhibits 31, 32, and 33 because this evidence was more prejudicial than probative. *See* TEX. R. EVID. 403. The State maintains these exhibits were properly admitted to rebut Jones's defensive theory that the Russian government planted files in Jones's computer and his contention that any child pornography found in his computer was there by accident or mistake. We agree with the State.

State's Exhibit 31 is a one-page document reflecting a sampling of the search terms Jones had previously used on the Shareaza file-sharing software. Examples of search terms included "young," "teen," "pthc," "14yo Blonde Lolita in Bed," and "Kinderkutje." Detective Quigley explained that "pthc" stands for preteen hardcore and that "kinderkutje" was a search term for kindergarten-age children. "Cat Goddess" was also a term on the list that was also part of the title of the video discovered by the Russian Ministry that was the impetus of this investigation.

State's Exhibit 32 is a one-page document reflecting a sampling of the Torrent file fragments that were found in Jones's computer. Detective Quigley explained that Torrent was a file-sharing network known to be used for downloading child pornography. The document showed the names of the file fragments as well as the dates on which they were created. For example, a fragment at the top of the page, with the creation date of February 7, 2014, showed a file with the name, "(PTHC)

7yo sex in serial (Hussyfan R@ygold) 6yo girl fucked~1.mpg." The document also showed a number of file fragments that were created on September 10, 2015. In his interview at the police station, Jones stated he was at his computer downloading files when the police entered his home with the search warrant on September 10, 2015. Detective Quigley testified this would explain why some of the files had creation dates of September 10, 2015 and were fragments.

State's Exhibit 33 is a one-page document reflecting a sampling of Jones's Shareaza library files. The files in the library had names such as "Pervert uncle," "Teen abused in bed by guy," "russian raped by 2 soldiers," "Brother forces his Little Sister to fuck," and "Russian teen redhead anal."

Extraneous offense evidence that tends to rebut a defensive theory is relevant beyond its character-conformity value. *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008); *Montgomery*, 810 S.W.2d at 387–88; *Jones v. State*, 119 S.W.3d 412, 419 (Tex. App.—Fort Worth 2003, no pet.). Such is the case here. These exhibits showed the jury that Jones had searched for and downloaded child pornography on numerous occasions including the day authorities executed the search warrant. The file names and search terms plainly indicate the illicit content of the media found and saved by Jones. Exhibits 31, 32, and 33 have highly probative value to rebut Jones's theory that he did not intentionally and knowingly possess videos 7i, 7w, and 7y.

Another defensive theory Jones sought to develop on cross-examination of Detective Quigley was that, if any child pornography was downloaded onto his computer, it must have been accidental, by mistake, or planted by the Russian government. The State's exhibits showing an extensive list of subfolders and file names tended to show Jones was experienced in searching for child pornography, and had numerous files available for sharing or viewing. His creation—or retention—of the highly descriptive, offensive, and lurid file names, which made them easily searchable by other users, was relevant to show Jones was aware of the illegal nature of his conduct and that the presence of the images on his computer was not accidental. State's Exhibits 31, 32, and 33 were relevant to the issues of motive, intent, plan, knowledge, and lack of mistake or accident. We agree with the State that those exhibits had relevance apart from evidence of character-conformity. *See* TEX. R. EVID. 404(b); *see also Wenger v. State*, 292 S.W.3d 191, 203 (Tex. App.—Fort Worth 2009, no pet.) (State's exhibit showing an extensive list of subfolders and file names indicating child pornography was downloaded onto appellant's computer was relevant to rebut defense that presence of indicted material was accidental); *Gerron v. State*, 524 S.W.3d 308, 320 (Tex. App.—Waco 2016, pet. ref'd) (possession of similar types of material—photographs of girls under the age of 18—is evidence the jury may consider as circumstantial evidence of defendant's culpable mental state).

Evidence relevant under Rule 404(b) may nevertheless be excluded if that evidence fails the Rule 403 balancing test. *See Gigliobianco*, 210 S.W.3d at 641–42 (setting out balancing test). Here, we conclude the trial court, after balancing the various Rule 403 factors, could have reasonably concluded that the probative value of State's Exhibits 31, 32, and 33 testimony and the State's need for that evidence were not substantially outweighed by prejudice or confusion or by the other dangers specified in the rule.

The first two *Gigliobianco* factors weigh heavily in favor of admitting State's Exhibits 31, 32, and 33. The evidence was probative to rebut Jones's defensive theories that he did not intentionally or knowingly possess the indicted images and that any files containing child pornography in his computer were downloaded by accident or mistake or were planted by the Russian government. The search terms included in State's Exhibit 31 and the file names found in State's Exhibits 32 and 33 describe sexual acts and pornographic content similar to the acts and content shown in the videos on which Jones was indicted. Those exhibits make it more likely that Jones was fully aware of the specific nature of the material that he downloaded on videos 7i, 7w, and 7y because the exhibits show numerous other searches and files of a similar nature in his computer. The evidence was needed by the State to show that Jones organized, stored, or shared the downloaded images as described by their titles and that his doing so was not the result of mistake or accident. The evidence was further needed by the State to rebut Jones's assertion that he did not intentionally

or knowingly possess videos 7i, 7w, and 7y, which were also found in his computer and were similar in nature, content, and title to the files listed on State's Exhibits 31, 32, and 33.

On the third factor, although extraneous acts involving sexual offenses involving children are inherently inflammatory, the potential for an improper decision was lessened by the trial court instructing the jury regarding the proper use of the extraneous act evidence. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (en banc) ("We generally presume the jury follows the trial court's instructions in the manner presented"). Thus, in light of the record here, the trial court could have reasonably concluded that if the third factor weighed against admission, it did so only slightly.

As to the fourth and fifth factors, we conclude the evidence was unlikely to confuse or distract the jury from the main issues and was unlikely to leave the jury ill-equipped to evaluate its probative force, particularly in light of the court's instructions, because State's Exhibits 31, 32, and 33 were comparably less egregious than videos 7i, 7w, and 7y. *See Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd) (potential for decision on an improper basis reduced when extraneous acts no more serious than allegations forming basis of indictment); *Wenger*, 292 S.W.3d at 204–05 (third, fourth, and fifth factors did not weigh in favor of exclusion where, in contrast to the items the appellant was charged with possessing and promoting, the exhibit at issue consisted only of a list of written titles

and the corresponding images were never shown to the jury). Finally, as to the sixth factor, the admission of State's Exhibits 31, 32, and 33 did not take an inordinate amount of time or merely repeat evidence already submitted.

Thus, we conclude that in balancing the applicable factors, the court could have reasonably concluded that the probative value of admitting State's Exhibits 31, 32, and 33 was not substantially outweighed by unfair prejudice or confusion of the issues, and because the evidence was thus within the zone of reasonable disagreement, no abuse of discretion occurred under Rule 403. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641–42 (listing factors to consider and determining court could have reasonably concluded factors weighed in favor of admitting evidence of defendant's breath test results over his rule 403 objection); *Cornelious v. State*, No. 05-18-00274-CR, 2019 WL 1236409, *5 (Tex. App.—Dallas Mar. 18, 2019, no pet.) (mem. op., not designated for publication) (affirming court's admission of extraneous evidence over rule 403 objections where court could reasonably conclude danger of unfair prejudice did not substantially outweigh its probative value). Because we conclude the trial court did not abuse its discretion in admitting State's Exhibits 31, 32, and 33 into evidence, we need not conduct a harm analysis. *See Coutta v. State*, 385 S.W.3d 641, 664 (Tex. App.—El Paso 2012, no pet.) (harm analysis unnecessary where admission of video recordings was not an abuse of discretion); *see also Hawkins v. State*, 135 S.W.3d 72, 76 (Tex. Crim. App.

2004) ("A harm analysis is employed only when there is error, and ordinarily, error occurs only when the trial court makes a mistake.")). We overrule Jones's first issue.

### 3. Exhibit 30 – Child pornography video discovered by the Russian Ministry

In his second issue, Jones claims the trial court abused its discretion by admitting State's Exhibit 30— the video discovered by the Russian Ministry during its early 2015 operation—because it was not relevant and was more prejudicial than probative. The Russian Ministry discovered that video being downloaded to the IP address associated with Jones's computer and residence. The video, which was three minutes and twenty-three seconds long, showed a fully clothed female child of about eleven, lying on a couch, and holding a lollipop. The child was later shown undressing, and an adult male was shown applying a lubricant on the child. One minute and fifty-six seconds into the video, the man was shown attempting to penetrate the child's anus or vagina with his penis. State's Exhibit 29 was a screenshot of a computer screen showing the video in State's Exhibit 30 during download.

During the cross-examination of Detective Quigley, the defense mentioned Russia and its involvement in the case for the first time despite the State's deliberate efforts to avoid eliciting testimony regarding Russia on direct examination. The defense also elicited testimony from Detective Quigley that, according to the State, gave the jury a false impression regarding how State's Exhibit 30 was downloaded

to Jones's computer. Specifically, the State argued the defense left the impression that the Russian government or a Russian citizen planted the video on Jones's computer rather than the Russian Ministry finding Jones downloading the video from a Russian server. The State sought to admit State's Exhibit 30 and to question Detective Quigley regarding the exhibit, how it came to be in his possession, and its role in the investigation, in order to respond to the defense's theories. The trial judge admitted State's Exhibit 30 and permitted the State to question Detective Quigley further. The jury was instructed, however, that State's Exhibits 29 and 30 were not being offered for the truth of the matters asserted therein and to consider those exhibits for the sole purpose of assisting the jury in determining Detective Quigley's "state of mind during the course of this investigation."

We conclude that State's Exhibit 30 was relevant beyond its character-conformity value because it tended to rebut Jones's defensive theory that the Russian government planted that video and other videos on his computer, and to respond to Jones's unsubstantiated claims regarding how State's Exhibit 30 came into the possession of the law enforcement agencies involved in the underlying investigation. *See Bass*, 270 S.W.3d at 563; *see also Montgomery*, 810 S.W.2d at 386–87; *Jones*, 119 S.W.3d at 419.

We further conclude that in balancing the applicable Rule 403 factors, the trial court could have reasonably concluded that the probative value of admitting State's Exhibit 30 was not substantially outweighed by unfair prejudice or confusion of the

issues, and because the evidence was thus within the zone of reasonable disagreement, no abuse of discretion occurred under Rule 403. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641–42. The first two *Gigliobianco* factors weigh heavily in favor of admitting State's Exhibit 30. The evidence was probative to rebut Jones's defensive theory that the Russian government planted that video and other videos on his computer, and to respond to Jones's unsubstantiated claims regarding how State's Exhibit 30 came into the possession of the law enforcement agencies involved in the underlying investigation. That exhibit included the IP address Detective Quigley ultimately linked to Jones, as well as the username Blackest_Waters that Jones admitted using on Facebook and for his Hotmail account. The evidence was needed by the State to rebut Jones's allegations that the Russian tip was unreliable. The identifying information on State's Exhibit 30 made it more likely the video was downloaded by someone at the IP address and not downloaded to Jones's computer by someone in Russia as defense counsel implied.

On the third factor, although the graphic nature of State's Exhibit 30 is inherently inflammatory, the potential for an improper decision was lessened by the trial court instructing the jury regarding the proper use of the evidence. *See Colburn*, 966 S.W.2d at 520. Thus, in light of the record here, the trial court could have reasonably concluded that if the third factor weighed against admission, it did so only slightly.

As to the fourth and fifth factors, we conclude the evidence was unlikely to confuse or distract the jury from the main issues and was unlikely to leave the jury ill-equipped to evaluate its probative force, particularly in light of the court's instructions, because State's Exhibit 30 was shorter in length than videos 7i, 7w, and 7y and was discussed and published to the jury in the context of explaining how the investigation commenced and led investigators to Jones. *See Robisheaux*, 483 S.W.3d at 220. Finally, as to the sixth factor, the admission of State's Exhibit 30, a video less than four minutes long, did not take an inordinate amount of time or merely repeat evidence already submitted.

We conclude that in balancing the applicable factors, the court could have reasonably concluded that the probative value of admitting State's Exhibit 30 was not substantially outweighed by unfair prejudice or confusion of the issues, and because the evidence was thus within the zone of reasonable disagreement, no abuse of discretion occurred under Rule 403. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641–42 (listing factors to consider and determining court could have reasonably concluded factors weighed in favor of admitting evidence of defendant's breath test results over his rule 403 objection); *Cornelious*, 2019 WL 1236409, at *5 (affirming court's admission of extraneous evidence over rule 403 objections where court could reasonably conclude danger of unfair prejudice did not substantially outweigh its probative value). Because we conclude the trial court did not abuse its

discretion in admitting State's Exhibit 30 into evidence, we need not conduct a harm analysis. *See Coutta* 385 S.W.3d at 664. We overrule Jones's second issue.

## B.     Probable Cause to Support the Search Warrant

In his final issue, Jones complains the search warrant was not supported by probable cause and, therefore, the trial court erred by denying his motion to suppress the child pornography videos recovered in the search that formed the basis of the indictments (i.e., video 7i, video 7w, and video 7y).

### 1.     Standard of Review and Applicable Law

A search warrant may not issue unless it is based upon probable cause, established by a sworn affidavit. U.S. CONST. amend. IV; TEX. CODE CRIM. PROC. art. 18.01(b); *State v. Jordan*, 342 S.W.3d 565, 568 (Tex. Crim. App. 2011). "Probable cause exists if, under the totality of the circumstances set forth in the affidavit before the magistrate, there is a 'fair probability' that contraband or evidence of a crime will be found in a particular place at the time the warrant is issued." *Jordan*, 342 S.W.3d at 568–69. The test is whether a reasonable reading by the magistrate would lead to the conclusion that the four corners of the affidavit provide a "substantial basis" for issuing the warrant. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). "The magistrate may interpret the affidavit in a non-technical, common-sense manner and may draw reasonable inferences from the facts and circumstances contained within its four corners." *Jordan*, 342 S.W.3d at 568–69. The focus is not on what other facts could or should have been included in

the affidavit; rather, the focus is on the combined logical force of facts that are actually in the affidavit. *Duarte*, 389 S.W.3d at 354–55.

We typically apply a bifurcated standard of review to a trial court's ruling on a motion to suppress by giving almost total deference to the trial court's determinations of fact and reviewing de novo the trial court's application of law. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). Where, as here, the motion to suppress is based on a magistrate's decision to issue a warrant, there are no credibility determinations to which we must defer because the trial court is constrained to the four corners of the affidavit. *Id.* In reviewing the magistrate's decision to issue a warrant, we view the magistrate's decision to issue the warrant with great deference. *Id.* As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable cause determination. *Id.* "We are not to view the affidavit through hypertechnical lenses; instead, we must analyze the affidavit with common sense, recognizing that the magistrate may draw reasonable inferences from the facts and circumstances contained in the affidavit's four corners." *Id.* In doubtful or marginal cases, the magistrate's determination should prevail. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010).

### 2. Analysis

Here, Jones argues the search warrant failed to establish probable cause because (1) the tip from the Russian Ministry was unreliable, (2) Detective Quigley's

factual assertions regarding his search queries and results were not accurate, and he failed to explain the difference between Gnutella and Gnutella2 networks, (3) Jones's searching on other peer-to-peer file sharing networks, his residence at a particular address, use of a particular GUID, and the client name Blackest_Waters are not facts that corroborate the specified illegal conduct in the search warrant, and (4) the tip from the Russian Ministry was stale and could not provide probable cause because too much time had elapsed between the Russian Ministry's discovery in February 2015 and the search on September 10, 2015 for there to be probable cause that child pornography would be in Jones's computer when the search was conducted. We disagree.

Applying the required standards and after reviewing de novo the facts set out in the four corners of the affidavit, we conclude the affidavit was sufficient to allow the magistrate to determine probable cause existed. The failure of the affidavit to identify a specific person from the Russian Ministry or INTERPOL that first viewed the images and the absence of any allegation of prior reliability of either the Russian Ministry, INTERPOL, or a specific person does not render the affidavit defective or insufficient for purposes of establishing probable cause. The United States and Russia are both member countries of INTERPOL that "work together and with the General Secretariat to share data related to police investigations" and are part of a global network of police along with 192 other member countries. https://www.interpol.int/en/Who-we-are/Member-countries (last visited August 27,

2020). That fact alone provided the magistrate with strong indicia of reliability regarding the information received from the Russian Ministry and INTERPOL. *See Johnson v. State*, 803 S.W.2d 272, 289 (Tex. Crim. App. 1990) ("Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number.") (quoting *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)); *see also State v. Coker*, 406 S.W.3d 392, 396 (Tex. App.—Dallas 2013, pet. ref'd) (explaining that the focus of a probable-cause determination is not what facts could or should have been included in the affidavit, but on the combined logical force of facts that are in the affidavit). Another indication of reliability is that both SA Cestare and Detective Quigley, long-tenured law enforcement officers with significant experience in combating the sharing and possessing of child internet pornography, viewed the screenshot and video sent by the Russian Ministry and INTERPOL and concluded the images were pornographic and likely illegal. *See Dawes v. State*, No. 05-08-00651-CR, 2009 WL 902013, at *5 (Tex. App.—Dallas Apr. 3, 2009, no pet.) (mem. op., not designated for publication) (magistrate could have reasonably concluded that "Yahoo Inc." was a reliable source of information, which consisted of cyber tip of pornographic images, because it was a well-known corporation that provides Internet services worldwide, has a stated interest in protecting its users from viewing materials that violate local, state, national, and international law, and two, experienced law enforcement officers viewed the exact images sent by Yahoo and

–27–

concluded the images were pornographic and likely illegal). Moreover, the failure to allege prior reliability is generally not a fatal defect in an affidavit. *Id.* (citing *Doescher v. State*, 578 S.W.2d 385, 388 (Tex. Crim. App. [Panel Op.] 1978)). Accordingly, we disagree with Jones's contention that the information from the Russian Ministry was unreliable or that the lack of evidence of prior reliability would have affected the magistrate's determination of probable cause.

Jones next complains that the affidavit included conflicting and inaccurate statements regarding the Gnutella and Gnuttella2 search networks, and included facts that did not support a conclusion that Jones was in possession of child pornography. We disagree with his interpretation of the facts included in the affidavit and find his contentions to be based on a "hypertechnical" analysis of the affidavit. In his seven-page affidavit, Detective Quigley set out in great detail how people use peer-to-peer (P2P) file sharing software and networks, such as Gnutella and EMule, to find, download, and store child pornographic images. He also explained how investigators can see the IP address of the computer that is running the P2P software and sharing files. Investigators then use that information to search public records to locate the specific Internet Service Provider (ISP) who has assigned that IP address to that computer, and then locate identifying information of the individual to whom the ISP account is registered. Detective Quigley then explained in detail how he and SA Cesare utilized the IP address and user name information provided by the Russian Ministry and INTERPOL to locate the computer associated

with the IP address, confirm the names of the owner of the ISP, IP address, and the residence, and discover recent search history on multiple P2P networks by the IP address at issue, as well as another IP address linked to Jones and his residential address. Detective Quigley based his affidavit on his extensive experience investigating the online exploitation of children in relation to violations of Texas Penal Code section 43.26.

Contrary to Jones's brief, the affidavit does not state that Detective Quigley believed the Gnutella and Gnutella2 are the same network. What the affidavit does state is that the Russian Ministry identified IP address 76.186.110.72 as it was sharing child pornography on the Gnutella2 network, and TWC records showed this IP address belonged to Jones. The affidavit also shows that Detective Quigley subsequently found that IP address 76.186.110.72, as well as another IP address leased by Jones at his Mesquite residence, were seen on the Gnutella, EMule, and BitTorrent P2P networks. Further, the client name linked to EMule search on the IP address 76.186.110.72 was Blackest_Waters. The magistrate could have reasonably inferred that Detective Quigley's subsequent investigation involving the Gnutella network merely showed that Jones was active on both the Gnutella2 and Gnutella networks, as well as a number of other networks, further bolstering probable cause to believe that child pornography would be found in Jones's computer. In reviewing the totality of the circumstances as stated in the affidavit, we believe that the

magistrate had a substantial basis for concluding that Jones was in possession of child pornography on his home computer.

We need not address Jones's complaint that the tip from the Russian Ministry was stale and could not provide probable cause by the time the warrant was issued and the search conducted because Jones did not make this argument below. As such, that complaint is not preserved for our review. *See* TEX. R. APP. P. 33.1. Nonetheless, had Jones asserted this objection below, the magistrate could have reasonably concluded that the pornographic images were still on Jones's computer at the time the warrant was issued. Detective Quigley stated in his affidavit that collectors of child pornography typically retain the images and recordings for many years and prefer not to be without their child pornography for any prolonged time period. *See Steele v. State*, 355 S.W.3d 746, 751 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (concluding that magistrate could have reasonably concluded defendant continued to be in possession of child pornography because affidavit provided "expert testimony that persons sexually attracted to children tend to collect sexually explicit photographs of children, treating the photographs as prized possessions, of which they rarely dispose"); *see also Morris v. State*, 62 S.W.3d 817, 823–24 (Tex. App.—Waco 2001, no pet.) (providing that where affidavit indicates activity of continuous nature, magistrate could have reasonably inferred that defendant had possession of pornography for substantial period of time, i.e., five months). Further, only six months had passed between the Russian Ministry's discovery and the

execution of the affidavit, and the affidavit included evidence of continued activity during that time. Thus, the affidavit contained sufficient information from which the magistrate had a substantial basis under the totality of the circumstances for concluding that probable cause existed that the computer and hard drives at Jones's home contained child pornography. *See Ex Parte Jones*, 473 S.W.3d 850, 857 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (magistrate could have reasonably concluded that pornographic images were still on appellant's computer at his apartment at the time the warrant was issued even though affidavit in support of warrant was based on appellant's purchases of subscriptions to child pornography website two years before affidavit was executed); *Sanders v. State*, 191 S.W.3d 272, 279–80 (Tex. App.—Waco 2006, pet. ref'd) (information obtained two years before warrant executed was not stale); *Burke v. State*, 27 S.W.3d 651, 655 (Tex. App.—Waco 2000, pet. ref'd) (information obtained one year before warrant executed was not stale).

We conclude that the facts and circumstances submitted to the magistrate within the "four corners" of the affidavit provide a substantial basis for the magistrate's conclusion that child pornography would probably be found at Jones's residence at the time the warrant was issued. Thus, the affidavit was sufficient to establish probable cause. We overrule Jones's third issue.

## CONCLUSION

The trial court did not abuse its discretion by admitting State's Exhibits 30 through 33. Further, the trial court did not err by accepting the magistrate judge's finding of probable cause to issue the search warrant. Accordingly, we overrule appellant's issues and affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2.(b)
190082F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

CASEY MICHAEL JONES,
Appellant

No. 05-19-00082-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F17-41184-V.
Opinion delivered by Justice Partida-
Kipness. Justices Nowell and Evans
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 27th day of August, 2020.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CASEY MICHAEL JONES,
Appellant

No. 05-19-00083-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F17-41185-V.
Opinion delivered by Justice Partida-
Kipness. Justices Nowell and Evans
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 27th day of August, 2020.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CASEY MICHAEL JONES,
Appellant

No. 05-19-00084-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F17-41186-V.
Opinion delivered by Justice Partida-
Kipness. Justices Nowell and Evans
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 27th day of August, 2020.